751 So.2d 537 (1999)
David GOODWIN, Petitioner,
v.
STATE of Florida, Respondent.
Herbert Jones, Petitioner,
v.
State of Florida, Respondent.
Nos. 93,491, 93,805.
Supreme Court of Florida.
December 16, 1999.
Rehearing Denied February 14, 2000.
Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, *538 Fifteenth Judicial Circuit, West Palm Beach, Florida; and Nancy A. Daniels, Public Defender, and Paula S. Saunders, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida, for Petitioners.
Robert A. Butterworth, Attorney General, Celia A. Terenzio, Assistant Attorney General, Chief, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, Florida; and James W. Rogers, Tallahassee Bureau Chief, and Carolyn M. Snurkowski and Denise O. Simpson, Assistant Attorneys General, Tallahassee, Florida, for Respondents.
PARIENTE, J.
We consolidate these cases because the Fourth District in Goodwin v. State, 721 So.2d 728, 731 (Fla. 4th DCA 1998), and the First District in Jones v. State, 715 So.2d 378, 378 (Fla. 1st DCA 1998), both certified the following question as one of great public importance:

IN APPEALS WHICH DO NOT INVOLVE CONSTITUTIONAL ERROR, DOES THE ENACTMENT OF SECTION 924.051(7), FLORIDA STATUTES, ABROGATE THE HARMLESS ERROR ANALYSIS ANNOUNCED IN [State v. DiGuilio], 491 So.2d 1129 (Fla.1986)?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the negative.

FACTS
We first briefly review the facts of both cases. In Goodwin, the prosecuting attorney erred by eliciting improper "bad neighborhood" testimony from one of the arresting officers that he targets "areas that are known for street level drug sales" and "tries to make buys from street level dealers." 721 So.2d at 728. The trial court sustained defense counsel's objection to the testimony and gave a curative instruction for the jury to disregard the comment. See id. The trial court reserved ruling on the defendant's motion for a mistrial until after trial, at which time it was denied. See id.
On appeal, the Fourth District held that this type of "bad neighborhood" testimony was not a "constitutional error" to which this Court's decision in DiGuilio applied. Id. Instead, the Fourth District found that the defendant had failed to meet his burden of demonstrating "prejudicial error" pursuant to section 924.051(7), Florida Statutes (1996). Goodwin, 721 So.2d at 729.
In Jones, the trial court allowed the introduction of collateral crimes evidence over the defendant's timely objection. The First District affirmed based on section 924.051(7), but certified the identical question as in Goodwin for this Court's review. Jones, 715 So.2d at 378.

ANALYSIS
The subject of the certified questions, section 924.051(7), provides:
In a direct appeal or a collateral proceeding, the party challenging the judgment or order of the trial court has the burden of demonstrating that prejudicial error occurred in the trial court. A conviction or sentence may not be reversed absent an express finding that a prejudicial error occurred in the trial court.
Section 924.051(1)(a) defines "prejudicial error" as "an error in the trial court that harmfully affected the judgment or sentence." Notably, section 924.051(7) does not distinguish between constitutional and nonconstitutional error.
The certified question raises important issues concerning the role of the appellate courts in ensuring that criminal trials are free of harmful error, an essential judicial function that serves to protect a defendant's constitutional right to a fair trial. By limiting the certified question to appeals that do not involve "constitutional error," a term not utilized in the statute, the First and Fourth Districts acknowledged *539 that in cases of constitutional error, state appellate courts are bound to apply the harmless error standard enunciated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and followed by this Court in DiGuilio. The State concedes this as well. In fact, the State contends that section 924.051(7) merely reaffirms existing standards of review. In order to test the validity of the State's position, we deem it appropriate to trace the evolution of the harmless error standard for review of criminal convictions.
In the early history of the United States justice system, appellate courts routinely reversed convictions for almost every error committed during trial. See Roger Traynor, The Riddle of Harmless Error 13 (1970). The threat of reversal was so great that appellate courts came to be described as "impregnable citadels of technicality." Kotteakos v. United States, 328 U.S. 750, 759, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (quoting Marcus A. Kavanaugh, Improvement of Administration of Criminal Justice by Exercise of Judicial Power, 11 A.B.A.J. 217, 222 (1925)).
Dissatisfied with automatic reversals based on "technical errors," described by Justice Frankfurter as ones concerned with the "mere etiquette of trials and with the formalities and minutiae of procedure," Bruno v. United States, 308 U.S. 287, 294, 60 S.Ct. 198, 84 L.Ed. 257 (1939), the great legal scholars of the day, including Taft, Wigmore, Pound and Hadley, sought the enactment of harmless error statutes in order to
substitute judgment for automatic application of rules; to preserve a check upon arbitrary action and essential unfairness in trials, but at the same time to make the process perform that function without giving men fairly convicted the multiplicity of loopholes which any highly and minutely detailed scheme of errors, especially in relation to procedure, will engender and reflect in a printed record.
Kotteakos, 328 U.S. at 760, 66 S.Ct. 1239.
Thus, the first federal harmless error statute, Act of February 26, 1919, ch. 48, 40 Stat. 1181, provided that reversal could not be based on errors "which [did] not affect the substantial rights of the parties." The goal of the statute was to prevent reversal based on mere "technical" errors at trial. See Kotteakos, 328 U.S. at 758-59, 66 S.Ct. 1239. This statute is strikingly similar to one of the other harmless error statutes in Florida, section 924.33, which provides that "[n]o judgment shall be reversed unless the appellate court is of the opinion ... that error was committed that injuriously affected the substantial rights of the appellant."[1]
Writing for the Court, Justice Rutledge cautioned in Kotteakos that, while the distinction between "technical errors" and errors affecting "substantial rights" was an easy one to require, the actual application of the distinction to a given case was more difficult. 328 U.S. at 761, 66 S.Ct. 1239. We agree that the "discrimination it requires is one of judgment transcending confinement by formula or precise rule," id., especially considering that "what may seem technical may embody a great tradition of justice." Id.
In Kotteakos, the Supreme Court enunciated the analysis to be applied by federal appellate courts in cases other than those involving departures from constitutional norms:
If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm.... But if one cannot say, with fair assurance, after pondering all that happened without stripping that erroneous *540 action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

Id. at 764-65, 328 U.S. 750 (emphasis supplied). Thus, the test for reversal established in Kotteakos requires the appellate court to determine whether the error had a "substantial influence" on the verdict, or whether the court is left with "grave doubt" as to its influence. Id. If the court cannot say with "fair assurance" that the error had no substantial effect on the verdict, reversal is required under this standard because it is "impossible to conclude that substantial rights were not affected." Kotteakos, 328 U.S. at 764-65, 66 S.Ct. 1239.
Despite developing its first harmless error analysis, the Supreme Court suggested in the Kotteakos opinion that constitutional error would continue to require automatic reversal, without regard to the error's effect on the verdict. See id. Twenty years later, in Chapman v. California, the Court reconsidered that assumption. 386 U.S. at 22, 87 S.Ct. 824.
In Chapman, the Court concluded that some constitutional errors could be considered harmless. Id. The Court struck down the California Supreme Court's application of the harmless error provision found in the California Constitution, which forbade reversal "unless `the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" Id. at 20, 87 S.Ct. 824 (quoting Cal. Const. art. VI, § 4½ (1914)).[2]
The error complained of in Chapman was an improper comment on the defendants' exercise of their right not to testify against themselves in a criminal proceeding. The Supreme Court concluded that this error intruded on the constitutional protections of the Fifth and Fourteenth Amendments and that it was therefore the Court's responsibility to protect these rights by reviewing the error independently. Recognizing that their prior cases indicated that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," the Court ultimately concluded that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 23-24, 87 S.Ct. 824.
This harmless error analysis adopted in Chapman requires appellate courts to first consider the nature of the error complained of and then the effect this error had on the triers of fact. See id. at 25-26, 87 S.Ct. 824. The Court applied this test to the facts in Chapman and enunciated the oft-quoted standard that reversal was required in that case because it was "completely impossible ... to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions." 386 U.S. at 26, 87 S.Ct. 824.
In DiGuilio, this Court considered whether the per se rule of reversal should continue to be applied to improper comments on the right to remain silent, or *541 section 924.33 and the United States Supreme Court's decision in Chapman permitted a harmless error analysis. See Di-Guilio, 491 So.2d at 1130; see also State v. Murray, 443 So.2d 955, 956 (Fla.1984) (holding that the appropriate standard to judge whether a prosecutor's improper closing argument was so prejudicial as to require a new trial was the "harmless error" rule set forth in Chapman).
DiGuilio began its analysis by acknowledging that the "authority of the legislature to enact harmless error statutes is unquestioned." Id. at 1134. This observation still holds true today. The Court further observed that the harmless error rule is "concerned with the due process right to a fair trial," id. at 1135, and "preserves the accused's constitutional right to a fair trial by requiring the state to show beyond a reasonable doubt that the specific comment(s) did not contribute to the verdict." Id. at 1136 (emphasis supplied). Thus, DiGuilio stands for the proposition "that a defendant has a constitutional right to a fair trial free of harmful error." State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995) (emphasis supplied).
We explained in DiGuilio that important policy concerns support the harmless error rule:
[The harmless error rule] preserves the public and state interest in finality of verdicts which are free of any harmful error. In view of the heavy burden the harmless error rule places on the state, it further serves as a strong deterrent against prosecutors advertently or inadvertently commenting on an accused's silence.
DiGuilio, 491 So.2d at 1136. In enunciating the harmless error test to be applied, we cited Chapman:
The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.
Id. at 1135.
In adopting Chapman's harmless error analysis, we provided "guidance" for the "benefit of further appellate review" by adopting the views of former Chief Justice Roger Traynor of the California Supreme Court view on how the harmless error test should be applied:
In his perceptive essay, The Riddle of Harmless Error, former Chief Justice Traynor addressed various common myths which, historically, appellate courts fall into when applying harmless error analysis. The worst is to abdicate judicial responsibility by falling into one of the extremes of all too easy affirmance or all too easy reversal. Neither course is acceptable. The test must be conscientiously applied and the reasoning of the court set forth for the guidance of all concerned and for the benefit of further appellate review. The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test.... The focus is on the effect of the error on the trier of fact.
Id. at 1139 (emphasis supplied). Finally, although the Court observed that no sentence should be reversed absent harmful error, the Court made clear that
[i]f the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
Id. Although the DiGuilio decision adopting Chapman arose in the context of constitutional error, we applied this standard in subsequent decisions regarding other types of errors, except those requiring per se reversal. See, e.g., State v. Davis, 720 So.2d 220, 230 (Fla.1998); Moore v. State, 701 So.2d 545, 550 (Fla.1997), cert. denied, 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (1998); State v. Lee, 531 So.2d 133, 134 (Fla.1988).
*542 Our decision in Lee is especially important for our analysis in this case. In Lee, this Court considered a certified question regarding whether the DiGuilio standard of harmless error should apply to require reversal for "erroneous admission of evidence of collateral crimes" where the "error has not resulted in a miscarriage of justice but the state has failed to demonstrate beyond a reasonable doubt that there is no reasonable possibility that the error affected the jury verdict." Lee, 531 So.2d at 134. In answering the question in the affirmative, we recognized that the certified question reflected the district court's acknowledgment of both section 924.33 and section 59.041. See id. at 136 n. 1.
Despite the existence of these harmless error statutes,[3] the Court reaffirmed the DiGuilio test and its applicability to the case. We concluded that neither of these statutes affected the harmless error standard enunciated in DiGuilio and we made clear that, although the Legislature has the authority to enact harmless error statutes like sections 924.33 and 59.041, this Court retains the authority to determine the analysis to be applied in deciding whether an error requires reversal. See id. at 136 n. 1.
In reaffirming DiGuilio and its applicability to error such as the improper admission of collateral crime evidence, we reiterated in Lee that the harmless error analysis focuses on the effect of the error on the trier of fact. Id. at 137. Thus, the reviewing court must resist the temptation to make its own determination of whether a guilty verdict could be sustained by excluding the impermissible evidence and examining only the permissible evidence. We also repeated our agreement with Chief Justice Traynor, previously quoted in DiGuilio:
Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
Lee, 531 So.2d at 137 (citations omitted); see also Ciccarelli v. State, 531 So.2d 129, 131 (Fla.1988).
Eleven years after Lee and after the enactment of yet another harmless error statute, we are now considering essentially the same issue as in Lee and we reach the same conclusion. First, as to federal constitutional errors, it is clear that section 924.051(7) cannot be held to abrogate the United States Supreme Court's decision in Chapman and our decision in DiGuilio.
At the outset, we note that the statute itself contains no language that would allow this Court to read section 924.051(7) as only applying to non-constitutional error as construed by the Fourth District in Goodwin. See Goodwin, 721 So.2d at 729. However, because the statute unambiguously applies to all errors in criminal appeals, construing the statute as limited to non-constitutional errors would effectively require us to rewrite section 924.051(7).
Further, even if this Court adopted a construction of section 924.051(7) as applying only to nonconstitutional errors, we note that no appellate court in Florida has defined where the line would be drawn between constitutional and nonconstitutional error. In Arizona v. Fulminante, 499 U.S. 279, 294, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), a case involving collateral *543 review, the Supreme Court identified fifteen "constitutional errors."[4] Clearly, errors that directly impact basic constitutional rights such as the right to remain silent as set forth in Chapman or the right to confront witnesses against the defendant such as in Bruton[5] are "constitutional errors."
There are many errors, however, that do not neatly fit into a fixed category such as "constitutional error," yet may be extremely serious. For example, the erroneous admission of collateral crime evidence is "presumptively harmful." Czubak v. State, 570 So.2d 925, 928 (Fla.1990); Castro v. State, 547 So.2d 111, 116 (Fla.1989). Is such "presumptively harmful" error also constitutional error? Certainly the admission of such evidence impacts the defendant's right to a fair trial and therefore implicates a defendant's basic due process rights.
We have seen of late repeated instances of improper closing argument. See, e.g., Ruiz v. State, 743 So.2d 1 (Fla. 1999), Gore v. State, 719 So.2d 1197, 1202 (Fla.1998), and cases cited therein. At what point does properly objectedto closing argument become constitutional error by thwarting the defendant's right to a fair trial? As these few cases demonstrate, it is difficult to establish a brightline test that would determine which errors rise to the level of constitutional significance.
To require the appellate courts to analyze each error to decide if it is constitutional or nonconstitutional before determining whether to apply the DiGuilio analytical framework would leave appellate courts to chart a course in murky waters. For example, some errors, while obviously not technical and not clearly constitutional, may nevertheless impact the constitutional right to a fair trial. To that end, were we to adopt this distinction, we can envision the development of an entire body of case law concerning whether, in any given case, the error complained of had constitutional significance. Further, any attempt to develop a "laundry list" of constitutional errors would not guarantee the integrity of the criminal process.
To the contrary, the State has argued, and we agree, that the enactment of section 924.051(7) merely reaffirms existing standards of review requiring the application of the DiGuilio test to errors that are not per se reversible. This reaffirmation is in recognition of the undeniable obligation of the judiciary to safeguard a defendant's right to a fair trial and its constitutional authority to determine "when an error is harmless and the analysis to be used in making the determination." Lee, 631 So.2d at 136 n. 1.
In fact, we view the enactment of section 924.051(7) as a codification of existing law *544 by referring to prejudicial error as "harmful" error. Because the term "harmful" is not defined by statute, we consider whether there are definitions of the same term found in case law. See State v. Mitro, 700 So.2d 643, 645 (Fla.1997). In this regard, we find that the DiGuilio defined "harmful error" as error about which "an appellate court cannot say beyond a reasonable doubt ... did not affect the verdict." As we explained in DiGuilio, harmful error is the converse of harmless error. 491 So.2d at 1139. Thus, we conclude that by referring to "harmful" error without defining the term, the Legislature incorporated the DiGuilio usage.
This brings us to the essential issue raised by the certified question: has the enactment of section 924.051(7) shifted the burden of proof regarding whether the error harmfully affected the verdict? In cases of doubt, does the benefit of that doubt now go to the beneficiary of the error? As Judge Griffin recognized, "Read literally and in isolation, the burden imposed by the statute to demonstrate that an error `harmfully affected the judgment or sentence' appears virtually impossible for a defendant to meet." Jackson v. State, 707 So.2d 412, 414 (Fla. 5th DCA 1998).
We interpret section 924.051(7) as a reaffirmation of the important principle that the defendant bears the burden of demonstrating that an error occurred in the trial court, which was preserved by proper objection. See, e.g., Castor v. State, 365 So.2d 701, 703 (Fla.1978); Driver v. State, 46 So.2d 718, 720 (Fla.1950). Only when the defendant satisfies the burden of demonstrating the existence of preserved error does the appellate court engage in a DiGuilio harmless error analysis. If the error is not properly preserved or is unpreserved, the conviction can be reversed only if the error is "fundamental." See, e.g., Chandler v. State, 702 So.2d 186, 191 (Fla.1997), cert. denied, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998); Whitfield v. State, 706 So.2d 1, 4 (Fla.1997), cert. denied, 525 U.S. 840, 119 S.Ct. 103, 142 L.Ed.2d 82 (1998); Larkins v. State, 655 So.2d 95, 98 (Fla.1995).
Our appellate cases are filled with examples of errors that are unpreserved either because no objection was made[6] or because the objection was not specific.[7] If the error is "invited,"[8] or the defendant "opens the door" to the error, the appellate court will not consider the error a basis for reversal.[9] In addition, if it is alleged that evidence has been improperly excluded and the appellate record does not establish that a proffer has been made, the lack of an adequate record will be grounds to affirm.[10] Indeed, our case law is filled with procedural pitfalls that may preclude an error from being considered on appeal.
Most importantly, without regard to the language of section 924.051(7), the *545 Legislature cannot relieve the appellate courts of their independent and inherent obligation to assess the effect of the error on the verdict. As observed by Justice Grimes in his concurring opinion in Ciccarelli, regarding whether each appellate judge must independently review the complete criminal trial record:
While the standard of review for harmless error is properly established by this Court, the manner by which each judge makes the determination of this issue must necessarily be decided by that judge. Each judge in the State of Florida takes an oath "to well and faithfully perform the duties" of his or her office. Art. II, Sec. 5, Fla. Const. In order to fulfill that oath, a finding of harmless error cannot be made unless the judge is satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict or judgment.

531 So.2d at 132 (emphasis supplied) (Grimes, J., specially concurring).
The solemn obligation of the Court to perform an independent harmless error review and establish the analysis to be applied in performing that review is so critical to the appellate function that this Court has satisfied its obligation to review for harmless error, even when the State has not argued that the complained of error was harmless. See Heuss v. State, 687 So.2d 823 (Fla.1996). We concluded in that case that regardless of any lack of argument on the issue by the state,

[t]he court must still be able to conclude beyond a reasonable doubt, after evaluation of the impact of the error in light of the overall strength of the case and the defenses asserted, that the verdict could not have been affected by the error.
Id. at 824. We further observed that
our holding is consistent with the legislative directive of the harmless error statutes, sections 59.041 and 924.33, Florida Statutes (1995), which prohibit reversal if the error does not result in a miscarriage of justice or injuriously affect a substantial right of the appellant.
Id. Thus, we held that "[t]o preclude application of the test merely because the State failed to make the argument would elevate form over substance and hamper the goal of efficient use of judicial resources." Id.
These observations of our Court are consistent with those of the United States Supreme Court. As Justice Breyer recently observed in explaining why a burden of persuasion is ill-suited to the appellate process:
The case before us does not involve a judge who shifts a "burden" to help control the presentation of evidence at a trial, but rather involves a judge who applies a legal standard (harmlessness) to a record that the presentation of evidence is no longer likely to affect. In such a case, we think it conceptually clearer for the judge to ask directly, "Do I, the judge, think that the error substantially influenced the jury's decision?" than for the judge to try to put the same question in terms of proof burdens (e.g., "Do I believe the party has borne its burden of showing ...?")
O'Neal v. McAninch, 513 U.S. 432, 436-37, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Justice Breyer went on to quote Chief Justice Traynor with approval on the issue of appellate responsibility:
Whether or not counsel are helpful, it is still the responsibility of the ... court, once it concludes that there was error, to determine whether the error affected the judgment. It must do so without benefit of such aids as presumptions or allocated burdens of proof that expedite fact-finding at the trial.
Id. (quoting Roger J. Traynor, The Riddle of Harmless Error 26 (1970)). Moreover, as Justice Stevens has observed, "In the end, the way we phrase the governing standard is far less important than the quality of the judgment with which it is applied." Brecht v. Abrahamson, 507 U.S. 619, 643, 113 S.Ct. 1710, 123 L.Ed.2d 353 *546 (1993) (Stevens, J., concurring); see also Kotteakos, 328 U.S. at 761, 66 S.Ct. 1239.
Review of the record to ascertain whether the error is harmless is an essential and critical appellate function. For this reason, we hold that to shift the burden to the defendant would not only be an abdication of judicial responsibility, but could lead to the unjust result of an affirmance of a conviction even though the appellate court was not convinced beyond a reasonable doubt that the error did not affect the defendant's conviction.
We further note that section 924.051(7) purports to apply the same standard for determining whether an error is harmless on direct appeal as in a claim for collateral relief after the conviction has been affirmed on direct appeal. However, this would be contrary to the long-standing principle of appellate review that applies a different standard for reversal on direct appeal than on collateral proceedings. As the United States Supreme Court has observed, once a conviction has been affirmed on direct appeal "a presumption of finality and legality attaches to the conviction and sentence." Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Our construction of section 924.051(7) accords with this principle that a different standard for determining whether an error harmfully affected the judgment applies on direct appeal than in postconviction proceedings.
Finally, reading the statute to reaffirm rather than abrogate existing standards of review furthers important policies by: (1) promoting public trust and confidence by preserving the State's interest in the finality of verdicts free from harmful error; see DiGuilio, 491 So.2d at 1136; (2) protecting a citizen's constitutional right to a fair trial by ensuring that no conviction will be affirmed unless, from a review of the record as a whole, there is no reasonable possibility that the error affected the verdict; (3) reaffirming the appellate courts' obligation not to reverse for technical or harmless error; and (4) providing an incentive on the part of the State, as beneficiary of the error, to refrain from causing error to occur in the trial of a case.
As in Lee, we continue to recognize the authority of the Legislature to enact harmless error statutes such as sections 924.051(7) and 924.33. However, we reaffirm our inherent authority "to determine when an error is harmless and the analysis to be used in making the determination." Lee, 531 So.2d at 136 n. 1; see also DiGuilio, 491 So.2d at 1137. Thus, in answering the certified question, we conclude that once the defendant has satisfied the burden of demonstrating that error has occurred, the DiGuilio standard of harmless error remains the applicable analysis to be employed in determining whether the error requires a reversal on direct appeal. Accordingly we answer the certified question in Goodwin and Jones in the negative.

B. Application in Goodwin

With these principles in mind, we first review Goodwin. In Goodwin, the issue on appeal before the Fourth District was whether reversal was required because of allegedly impermissible "bad neighborhood" testimony. However, in Goodwin the trial court not only sustained the objection to the "bad neighborhood" testimony, but gave the jury a curative instruction to disregard the comment. The defendant then moved for a mistrial. The trial court reserved ruling on the motion until after trial at which time the motion for mistrial was denied. As explained by the Fourth District, similar testimony had already been admitted without objection. Goodwin, 721 So.2d at 728-29.
This Court's case law states that a trial court's ruling on a motion for mistrial is subject to an abuse of discretion standard of review. See Cole v. State, 701 So.2d 845, 853 (Fla.1997), cert. denied, 523 U.S. 1051, 118 S.Ct. 1370, 140 L.Ed.2d 519 (1998); Power v. State, 605 So.2d 856, 860 *547 (Fla.1992).[11] Recently we reaffirmed that a motion for mistrial "should be granted only when it is necessary to ensure that the defendant receives a fair trial." Cole, 701 So.2d at 853; see also Terry v. State, 668 So.2d 954, 962 (Fla.1996). We held in Cole that because the complained-of remark "was not so prejudicial as to require reversal," the trial court did not abuse its discretion. 701 So.2d at 853.
Therefore, use of a harmless error analysis under DiGuilio is not necessary where, as occurred in Goodwin, the trial court recognized the error, sustained the objection and gave a curative instruction. Instead, the correct appellate standard is whether the trial court abused its discretion in its denial of a mistrial. In analyzing the abuse of discretion issue in Goodwin, it is necessary to determine whether the single improper remark, to which the trial court sustained an objection and gave a curative instruction, was so prejudicial as to deny defendant a fair trial. See Cole, 701 So.2d at 853. Accordingly, while we answer the certified question in the negative, we approve the result in Goodwin.

C. Application in Jones

The claimed error in the consolidated case of Jones was the admission of collateral crime evidence over the defendant's objection, which was overruled. The State concedes that neither party addressed the applicability of section 924.051(7), the enactment of which postdated the crime. On appeal to the First District, the State relied on DiGuilio to argue that the admission of the collateral crime evidence was harmless beyond a reasonable doubt. However, collateral crime evidence is presumptively harmful. See Czubak, 570 So.2d at 928. It is clear that Lee requires the application of DiGuilio to the improper admission of collateral crime evidence. Based on the foregoing, we quash Jones. We remand to the district court for further consideration in light of this opinion.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, LEWIS and QUINCE, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, J., concurring in part and dissenting in part.
I dissent from answering the certified question in the negative. I dissent from quashing the decision of the First District in Jones v. State, 715 So.2d 378 (Fla. 1st DCA 1998). I concur in approving the result in Goodwin v. State, 721 So.2d 728 (Fla. 4th DCA 1998).
I begin from the perspective of the following hallmark principles which have long guided this Court in issues concerning the giving of effect to legislative enactments.
1. "[W]hen reasonably possible and consistent with legislative intent, we must give preference to a construction which will give effect to the statute over another construction which would defeat it." Schultz v. State, 361 So.2d 416, 419 (Fla.1978).
2. "It is a fundamental rule of statutory construction that statutory language cannot be construed so as to render it potentially meaningless." Ellis v. State, 622 So.2d 991, 1001 (Fla.1993).
3. "[T]his Court is eminently qualified to give Florida statutes a narrowing construction to comply with our state and federal constitutions. In fact, it is our duty to save Florida statutes from the constitutional dustbin whenever possible. We have done so regularly and with *548 statutes that required far more rewriting than the present sections." Doe v. Mortham, 708 So.2d 929, 934 (Fla.1998) (footnotes omitted).
4. "The authority of the legislature to enact harmless error statutes is unquestioned. Contraposed to this legislative authority, the courts may establish the rule that certain errors always violate the right to a fair trial and are, thus, per se reversible. To do so, however, we are obligated to perform a reasoned analysis which shows that this is true, and that, for constitutional reasons, we must override the legislative decision." State v. DiGuilio, 491 So.2d 1129, 1134 (Fla.1986) (footnote omitted).
5. "[W]e believe that the legislature may implement this constitutional right and place reasonable conditions upon it so long as they do not thwart the litigants' legitimate appellate rights." Amendments to the Florida Rules of Appellate Procedure, 685 So.2d 773, 774 (Fla.1996).
Applying the foregoing sound principles of this Court, I conclude that there is a distinction, as recognized by the federal courts and virtually every other state court, between constitutional error and nonconstitutional error. This Court's decision in DiGuilio addresses constitutional error and is in accord with the United States Supreme Court decisions in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), as to the analysis to be applied to constitutional error on direct appeal.
However, as to nonconstitutional error, DiGuilio should not be held to be controlling in light of the legislative enactment of section 924.051(7), Florida Statutes. This statute can easily be given its plainly intended effect by giving to it a narrowing construction of pertaining only to nonconstitutional error. The plainly intended effect of the statute in respect to nonconstitutional error is to place the burden upon the party claiming error to demonstrate that the error was "prejudicial," with prejudice being defined in accord with Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The Kotteakos test for harmless error is whether the error had substantial and injurious effect or influence in determining the jury's verdict. This is considered to be a less onerous standard for determining that error was harmless than the Chapman standard adopted in DiGuilio, which is to the exclusion of a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Giving to this statute its plainly intended effect in respect to nonconstitutional error would be consistent with the federal courts as the standard to be applied in reviewing nonconstitutional error and as to the other state courts in respect to the burden of demonstrating harmful error.
In Brecht, the Court said that the Kotteakos standard, "had substantial and injurious effect or influence in determining the jury's verdict," was grounded in the federal harmless error statute, 28 U.S.C. § 2111, which is only applied to claims of nonconstitutional error. It said that Chapman's "harmless beyond a reasonable doubt" standard is applied to claims of constitutional error. 507 U.S. at 630-31, 113 S.Ct. 1710.
The Court in United States v. Lane, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), applied the less stringent Kotteakos harmless error standard to a case of misjoinder. It explained that the joinder standards under the federal criminal rules were not themselves of constitutional magnitude. 474 U.S. at 446, 449, 106 S.Ct. 725. Hence, it held that misjoinder affects substantial rights only if it results in actual prejudice. Id. at 449, 106 S.Ct. 725.
Later, in Dowling v. United States, 493 U.S. 342, 346-347, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the Court agreed with *549 the circuit court's determination that a less stringent standard than the harmless error rule articulated in Chapman applied because the error was merely evidentiary and not constitutional in nature. 493 U.S. at 346, 354, 110 S.Ct. 668. The trial court in Dowling admitted testimony over the defendant's claim that it was barred by collateral estoppel. The Supreme Court reasoned that because the evidence was only barred by the common-law doctrine of collateral estoppel, the government was not "constitutionally" barred from using the contested testimony. 493 U.S. at 350, 110 S.Ct. 668. See also United States v. Quintero, 38 F.3d 1317 (3d Cir.1994); United States v. Grayson, 795 F.2d 278, 290 (3d Cir.1986).
In People v. Mateo, 453 Mich. 203, 551 N.W.2d 891 (1996), the Supreme Court of Michigan was confronted with this exact question. The Supreme Court of Michigan held that the legislative harmless error statute was not a usurpation of the court's authority and that courts are not to analyze nonconstitutional error for harmlessness beyond a reasonable doubt. There is no reason Florida should not recognize this view.
Many courts have explicitly found, as the statute in this case requires, that the burden should be on the defendant to show prejudicial or harmful error on appeal. See, e.g., People v. Vigil, 718 P.2d 496, 500 (Colo.1986) ("Because the defendant does not allege a deprivation of constitutional rights ... the defendant has the burden of showing prejudice."); State v. McKnight, 47 Conn.App. 664, 706 A.2d 1003, 1007 (1998) ("When a trial error ... does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error."); Stewart v. State, 180 Ga.App. 266, 349 S.E.2d 18, 19 (1986) ("The burden is on the party claiming error not only to show error, but error which injured him and unless the error results in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right, an appellate court will not reverse."); State v. Rodriquez, 106 Idaho 30, 674 P.2d 1029 (1983) ("An appellant has the burden to show prejudicial error.... [E]rror will be deemed harmless if an appellate court finds, beyond a reasonable doubt, that there was no reasonable possibility that the erroneously admitted evidence contributed to the conviction."); Edwards v. State, 479 N.E.2d 541, 548 (Ind.1985) ("The appellant always has the burden to show affirmatively that the alleged error was prejudicial."); Commonwealth v. A Juvenile, 384 Mass. 390, 425 N.E.2d 294, 296 (1981) ("The burden is on the defendant to show prejudice."); State v. Hicks, 333 N.C. 467, 428 S.E.2d 167, 174 (1993) (for errors other than those arising under the Federal Constitution, "the defendant has the burden of establishing prejudice by showing that `there is a reasonable possibility ... a different result would have been reached at the trial [absent the error]'"); Harrall v. State, 674 P.2d 581 (Okla.Crim.App.1984) ("[T]he burden is on the appellant to establish the fact that he was prejudiced in his substantial rights by the commission of error."); State v. Fender, 358 N.W.2d 248, 254 (S.D.1984) ("Appellant must affirmatively show prejudicial error. A showing of prejudicial error requires a showing from the record that under the evidence the jury might and probably would have returned a different verdict if the alleged error had not occurred."); Wilson v. State, 646 S.W.2d 472, 473 (Tex.App.1982) ("It is encumbent [sic] upon the appellant to show harm or prejudice when he alleges error."); State v. Bushey, 147 Vt. 140, 513 A.2d 1177, 1182 (1986) ("[D]efendant bears the burden of showing prejudicial error."); Dotson v. State, 712 P.2d 365, 366 (Wyo.1986) ("Error which does not affect substantial rights is regarded as harmless and `shall be disregarded' on appeal.... Appellant must show prejudice and has the burden of establishing that prejudice.").
I reject the majority's analysis, which renders section 924.051(7), in reality, a nullity, *550 although stopping short of holding the statute unconstitutional. What the majority does is directly contrary to the reasoning in DiGuilio that the Court is bound to honor the authority of the legislature to enact harmless error statutes which will only be overridden by the Court for constitutional reasons.
I reject the majority's premise that to distinguish between constitutional errors and nonconstitutional errors is too difficult a task for Florida's appellate courts. If this analysis can be successfully performed by the federal courts and the appellate courts of other states, our courts clearly have the capability.
The majority relies upon this Court's 1988 decision in State v. Lee, 531 So.2d 133 (Fla.1988), which I find to be clearly not determinative of the present issue. First, Lee did not differentiate between constitutional and nonconstitutional error. It was plainly not an issue discussed. Second, Lee was prior to the 1996 act which results in the need for an opinion in this case. Third, Lee was decided before the important decisions of the United States Supreme Court in Brecht (making clear the distinction between constitutional error and nonconstitutional error for purposes of the application of the Chapman and Kotteakos tests) and Dowling.
I reject the analysis in the majority opinion which states, "We interpret section 924.051(7) as a reaffirmation of the important principle that the defendant bears the burden of demonstrating that an error occurred in the trial court, which was preserved by proper objection." Majority op. at 17. That interpretation either ignores or gives hollow effect to the plain language of the section, which is "has the burden of demonstrating that prejudicial error occurred in the trial court." Obviously, it is patently erroneous to substitute "preserved" for "prejudicial."
I adopt the analysis of Judge Klein in his concurring opinion in Goodwin in the Fourth District:
I fully agree with the majority opinion and am writing only to explain more fully why we are not citing State v. DiGuilio, 491 So.2d 1129 (Fla.1986), as authority to determine whether the error is harmless, but rather section 924.051(7), Florida Statutes (Supp.1996), which provides:
In a direct appeal or a collateral proceeding, the party challenging the judgment or order of the trial court has the burden of demonstrating that a prejudicial error occurred in the trial court. A conviction or sentence may not be reversed absent an express finding that a prejudicial error occurred in the trial court.
As the United States Supreme Court observed in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), harmless error statutes were adopted by the states, as well as Congress, in the early part of this century, as a reaction to widespread dissatisfaction with appellate courts routinely reversing criminal convictions. The Kotteakos court quoted a 1925 article suggesting that appellate courts towered "above the trials of criminal cases as impregnable citadels of technicality." Id. at 759, 66 S.Ct. at 1245.
In Kotteakos the Court, in addressing the federal harmless error statute, was careful not to ascribe any burden to one side or the other, although it noted that the legislative history reflected that Congress intended for the burden to be on the appellants for technical errors, but on beneficiaries of the errors for substantive ones. Id. at 765, 66 S.Ct. at 1248.
The most important federal decision pertinent to this analysis is Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), because federal constitutional rights are often implicated in criminal cases, and also because DiGuilio is based on Chapman. In Chapman the issue before the United States Supreme Court was whether a state prosecutor's *551 comment on the defendant's failure to testify, a violation of the Fifth Amendment, could be harmless error. The Court held in Chapman that although some constitutional violations are per se reversible, such as the denial of the right to counsel, there are constitutional errors which can be harmless if the state can "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. at 828. The Court held that the comment on the defendant's silence in Chapman was of the type that could be harmless, but under the facts it did not pass the harmless error test enunciated in Chapman and therefore required a new trial.
Significantly, after announcing the "harmless beyond a reasonable doubt" test for federal constitutional error in Chapman, the Court observed that "appellate courts do not ordinarily have the original task of applying such a test." 386 U.S. at 24, 87 S.Ct. at 828. The Chapman Court also noted that every state had a harmless error statute or rule and that they "serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." Id. at 24, 87 S.Ct. at 828. Chapman, along with the fact that the federal constitution does not require states to grant appeals to criminal defendants, leads me to conclude that the burden established by section 924.051(7) is permissible under federal law except where there is a federal constitutional violation, in which case the Chapman standard controls.
This brings us to DiGuilio. Shortly before DiGuilio, the Florida Supreme Court concluded in State v. Murray, 443 So.2d 955 (Fla.1984), that the appropriate test for determining whether error is prejudicial or harmless was the rule established by the United States Supreme Court in Chapman. In Murray, however, the error was not one which violated the defendant's rights under the federal constitution. As a result of confusion between Murray and other Florida Supreme Court decisions, the fifth district in DiGuilio certified a question of great public importance as to whether a comment on the right to silence, a constitutional violation, was per se reversible error.
At the time DiGuilio was decided section 924.051(7) was not in effect; however, we then had, and still have, section 924.33, which provided:
No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.
The DiGuilio court observed:
Section 924.33 respects the constitutional right to a fair trial free of harmful error but directs appellate courts not to apply a standard of review which requires that trials be free of harmless errors. The authority of the legislature to enact harmless error statutes is unquestioned. Contraposed to this legislative authority, the courts may establish the rule that certain errors always violate the right to a fair trial and are, thus, per se reversible. To do so, however, we are obligated to perform a reasoned analysis which shows that this is true, and that, for constitutional reasons, we must override the legislative decision. (footnote omitted).
The DiGuilio court then went on to adopt, for constitutional errors, the same standard adopted by the United States Supreme Court in Chapman, setting it out as follows:
The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable *552 doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828.

DiGuilio, 491 So.2d at 1135.
Returning to section 924.051(7), which puts the burden of demonstrating prejudice on the defendant, I note that when the Florida Supreme Court implemented other portions of the "Criminal Appeal Reform Act of 1996," of which section 924.051(7) is a part, it expressed the belief that the legislature could "place reasonable conditions upon [the right of appeal provided by the Florida Constitution] so long as they do not thwart the litigants' legitimate appellate rights." Amendments to Fla. R.App. P., 685 So.2d 773, 774 (Fla.1996).
Finally, it is at least worth mentioning that just as civil judgments are presumed correct on appeal, so are criminal convictions. Spinkellink v. State, 313 So.2d 666 (Fla.1975). In light of that presumption, as well as the deference given the legislature regarding harmless error statutes by both the Chapman and DiGuilio courts, I agree that section 924.051(7), and not the standard established in DiGuilio for constitutional error, is the harmless error test to apply here.
Goodwin, 721 So.2d at 729-31 (Klein, J., concurring specially) (footnotes omitted).
I would also adopt the following from Judge Klein's opinion in Mason v. State, 719 So.2d 304, 306 (Fla. 4th DCA 1998):
Although we concluded in Goodwin that our supreme court in DiGuilio was only deciding when constitutional error can be harmless, we believe that the general thoughts expressed by the court are still significant in helping us to determine whether nonconstitutional error is harmful under § 924,051(7), which took effect in 1996. In that regard, one sentence in the above quote bears repeating:
The focus is on the effect of the error on the trier-of-fact.
491 So.2d at 1139.
It is important, when determining the effect of an error on the fact finder, to keep in mind that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Accordingly, even where the defendant in a criminal case has the burden of demonstrating the prejudicial effect of the error, that burden will be easier to carry than the burden on an appellant in a civil case in which the burden of proof in the trial court is lighter, i.e., preponderance of the evidence or clear and convincing evidence.
Judge Klein does what we stated in Schultz in 1952 that it was our duty to do: "give preference to a construction which will give effect to the statute."
NOTES
[1] Section 924.33, Florida Statutes (1997), was first enacted in 1939 and is still in effect today.
[2] Note the similarity between this constitutional provision and section 59.041, Florida Statutes (1997), which provides:

No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of [1] misdirection of the jury or [2] the improper admission or rejection of evidence or [3] for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.
(Emphasis supplied.) This statute was first enacted in 1911 and is still in effect today.
[3] Section 924.33 provides that a conviction should not be reversed unless the error affected the defendant's substantial rights and states that "[i]t shall not be presumed that error injuriously affected the substantial rights of the appellant." Section 59.041 specifies that "improper admission or rejection of evidence" should lead to reversal only if "after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice."
[4] These errors included: (1) unconstitutionally overbroad jury instructions; (2) the admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment Counsel Clause; (3) a jury instruction containing an erroneous conclusive presumption; (4) a jury instruction misstating an element of the offense; (5) erroneous exclusion of a defendant's testimony regarding the circumstances of his confession; (6) restriction on a defendant's right to cross-examine a witness for bias in violation of the Sixth Amendment Confrontation Clause; (7) the denial of a defendant's right to be present at trial; (8) improper comments on a defendant's silence at trial in violation of the Fifth Amendment Self-incrimination Clause; (9) a statute improperly forbidding the trial court's giving a jury instruction on a lesser included offense in a capital case in violation of the Due Process Clause; (10) the failure to instruct the jury on the presumption of innocence; (11) the admission of identification evidence in violation of the Sixth Amendment Counsel Clause; (12) admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment Counsel Clause; (13) a confession obtained in violation of the Sixth Amendment; (14) admission of evidence obtained in violation of the Fourth Amendment; (15) denial of counsel at a preliminary hearing in violation of the Sixth Amendment Counsel Clause. See Arizona v. Fulminante, 499 U.S. 279, 294, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
[5] Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[6] See, e.g., Shellito v. State, 701 So.2d 837, 841 (Fla.1997), cert. denied, 523 U.S. 1084, 118 S.Ct. 1537, 140 L.Ed.2d 686 (1998); Ferrell v. State, 686 So.2d 1324, 1328 (Fla.1996), cert. denied, 520 U.S. 1173, 117 S.Ct. 1443, 137 L.Ed.2d 549 (1997).
[7] See Gamble v. State, 659 So.2d 242, 245 (Fla.1995); Windom v. State, 656 So.2d 432, 439 (Fla.1995); Rodriguez v. State, 609 So.2d 493, 499 (Fla.1992).
[8] Under the invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal. See Norton v. State, 709 So.2d at 89, 94 (Fla. 1997); Terry v. State, 668 So.2d 954, 962 (Fla.1996); Czubak v. State, 570 So.2d 925, 928 (Fla.1990); Pope v. State, 441 So.2d 1073, 1076 (Fla.1983).
[9] See Knight v. State, 721 So.2d 287, 296 (Fla.1998), cert. denied, ___ U.S. ___, 120 S.Ct. 459, 145 L.Ed.2d 370, 68 U.S.L.W. 3307 (1999) (No. 98-9741); Monlyn v. State, 705 So.2d 1, 4 (Fla.1997), cert. denied, 524 U.S. 957, 118 S.Ct. 2378, 141 L.Ed.2d 745 (1998); Tompkins v. State, 502 So.2d 415, 419 (Fla. 1986); Bozeman v. State, 698 So.2d 629, 630-31 (Fla. 4th DCA 1997).
[10] See Finney v. State, 660 So.2d 674, 684 (Fla.1995); Norton v. State, 709 So.2d 87, 96 (Fla.1997); Lucas v. State, 568 So.2d 18, 21 (Fla.1990); Loehrke v. State, 722 So.2d 867, 871 (Fla. 5th DCA 1998).
[11] We recognize that we have not always been consistent in applying the abuse of discretion standard to denials of motions for mistrial. See, e.g., Whitton v. State, 649 So.2d 861, 864 (Fla.1994) (applying a DiGuilio analysis to a trial court's denial of a motion for mistrial); see also Lowder v. State, 589 So.2d 933, 935-36 (Fla. 3d DCA 1991).