866 So.2d 1257 (2004)
Thomas F. CROW, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-3404.
District Court of Appeal of Florida, First District.
February 19, 2004.
*1258 Nancy A. Daniels, Public Defender and David A. Davis, Assistant Public Defender, Tallahassee, for Appellant.
Charles J. Crist, Jr., Attorney General and Bryan Jordan, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, J.
This is an appeal from an order summarily denying a motion for postconviction DNA testing. We conclude that the motion is sufficient on its face to establish a right to testing under rule 3.853 of the Florida Rules of Criminal Procedure and that the rule is a valid exercise of judicial authority under the Florida Constitution. For these reasons, we reverse for a hearing on the motion.
The defendant, Thomas Crow, was convicted of first-degree murder in 1985, and his conviction was affirmed on appeal. See Crow v. State, 503 So.2d 420 (Fla. 1st DCA 1987). On December 26, 2002, he filed a motion for postconviction DNA testing alleging that the test results would prove that he was not the source of the semen found in the victim's rectum. According to the motion, the state's theory of the case was that the crime was a "homosexual murder" in which the defendant allegedly murdered the victim and then committed an act of anal intercourse with the corpse. The defendant admitted that he stabbed the victim, but denied that he committed the alleged anal intercourse. He claimed that the victim was making forcible sexual advances and that he killed him in self defense.
The state used the evidence that the victim had semen in his rectum to support its theory of premeditation and to refute the defendant's claim of self defense. At the time of the trial, the semen could not be positively identified as that of the defendant, but the state argued that if it could have been matched to the defendant then it would be "conclusive proof" that he committed the murder.
In response to the motion, the state argued that the defendant was not entitled to a DNA test because he had not shown that he was innocent of the crime. The state did not claim that the allegations of the motion were untrue. Nor did the state refute the defendant's contention that the evidence of the unidentified semen was used as a critical link in the proof against the defendant at trial. Rather, the state argued that the defendant was not entitled to a DNA test because he admitted that he stabbed the victim to death.
The trial court agreed with the state and denied the motion without setting it for a hearing under the procedure in rule 3.853(c). In the order summarily denying relief, the trial court stated that DNA testing would serve no purpose given the defendant's admission that he had killed the victim. The order goes on to explain that testing is not available because "identification was not in issue." This order is the subject of the present appeal.
We have jurisdiction. An order on a motion for postconviction DNA testing is in the same class as an order on a motion to vacate a conviction or to correct an illegal sentence. Rule 9.140(b)(1)(D) of the Florida Rules of Appellate Procedure states that in criminal cases a defendant may appeal "orders entered after final judgment or finding of guilt, including orders revoking or modifying probation or community control, or both, or orders denying relief under Florida Rule of Criminal Procedure 3.800(a), 3.850, or 3.853." See also Fla. R.Crim. P. 3.853(f).
*1259 The state contends that the order summarily denying the motion for DNA testing should be affirmed because the motion fails to establish that the defendant has a right to testing under section 925.11, Florida Statutes (2003). The state does not deny that the defendant's motion is sufficient under rule 3.853, but contends that the rule violates the separation of powers provision of Article II, section 3 of the Florida Constitution. Specifically, the state argues that the statute must prevail over the rule on the issue of eligibility for postconviction DNA testing because that is a matter of substantive law.
We begin our analysis by acknowledging that the statute is more restrictive than the rule. The statute states in material part:
(2) Method for seeking postsentencing DNA testing.
(a) The petition for postsentencing DNA testing must be made under oath by the sentenced defendant and must include the following:
1. A statement of the facts relied on in support of the petition, including a description of the physical evidence containing DNA to be tested and, if known, the present location or the last known location of the evidence and how it was originally obtained;
2. A statement that the evidence was not previously tested for DNA or a statement that the results of any previous DNA testing were inconclusive and that subsequent scientific developments in DNA testing techniques would likely produce a definitive result;
3. A statement that the sentenced defendant is innocent and how the DNA testing requested by the petition will exonerate the defendant of the crime for which the defendant was sentenced or will mitigate the sentence received by the defendant for that crime;
4. A statement that identification of the defendant is a genuinely disputed issue in the case, and why it is an issue;

5. Any other facts relevant to the petition; and
6. A certificate that a copy of the petition has been served on the prosecuting authority.
§ 925.11(2)(a), Fla. Stat. (2003) (emphasis added). By the terms of the statute, postconviction DNA testing is available only to resolve a claim of mistaken identity. A defendant who admits that he committed the act but asserts an affirmative defense to criminal liability would not be entitled to a DNA test, even if the test would conclusively prove the defense.
In contrast, the rule does not limit ways in which scientific evidence might be used to prove that a person is innocent. Rule 3.853 states in relevant part:
Contents of Motion. The motion for postconviction DNA testing must be under oath and must include the following:
(1) a statement of the facts relied on in support of the motion, including a description of the physical evidence containing DNA to be tested and, if known, the present location or last known location of the evidence and how it originally was obtained;
(2) a statement that the evidence was not tested previously for DNA, or a statement that the results of previous DNA testing were inconclusive and that subsequent scientific developments in DNA testing techniques likely would produce a definitive result;
(3) a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime;

*1260 (4) a statement that identification of the movant is a genuinely disputed issue in the case and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received;
(5) a statement of any other fact relevant to the motion; and
(6) a certificate that a copy of the motion has been served on the prosecuting authority.
Fla. R.Crim. P. 3.853(b) (emphasis added). It is apparent from this language that testing may be available even if the defendant does not deny commission of the act alleged to be a crime. The pertinent part of the rule makes testing available if the result would show that the defendant was misidentified or if the result would otherwise exonerate the defendant.
In the present case, the defendant qualifies for testing under the rule but not under the more restrictive terms of the statute. This brings us to the heart of the issue: whether the right to obtain scientific evidence to show that a person was wrongfully convicted is a matter for the courts or for the Legislature.
The state contends that eligibility for postconviction DNA testing is a matter of substantive law and therefore that the statute prevails over contrary provisions in the rule. This argument would be more appealing if we were to consider only the text of the statute and rule and not the underlying authority to define the rights at issue. Some separation of powers issues cannot be resolved merely by characterizing the nature of the regulation as substantive or procedural.
The distinction between procedural law and substantive law is controlling if the only source of authority for a rule or statute is the general power conferred by the state constitution, but this distinction is immaterial if the rule or statute is based on a specific grant of constitutional power. If a statute purports to regulate a matter that is within the exclusive control of the judiciary under a specific grant of constitutional authority, then it makes no difference whether the right created by the statute is characterized as substantive or procedural. In neither case could the statute prevail over conflicting provisions of a court rule implementing the constitutional authority in question.
Article II, section 3 of the Florida Constitution states, "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." One of the powers assigned to the judicial branch under the Constitution is the power to issue writs of habeas corpus. This power exists on three levels of the Florida court system. See Art. V, § 3(b)(9), Fla. Const. (authorizing the supreme court or justices of the supreme court to issue writs of habeas corpus); Art. V, § 4(b)(3), Fla. Const. (conferring jurisdiction on the district courts of appeal and judges of the district courts to issue writs of habeas corpus); Art. V, § 5(b), Fla. Const. (providing that judges of the circuit courts have authority to issue writs of habeas corpus).
The Legislature could not define the circumstances in which a writ of habeas corpus could be issued because that would violate the separation of powers provision in Article II, section 3. The analysis of the problem is no different for postconviction remedies available under the rules of procedure because they merely replace the remedies that were once available by habeas corpus. See State v. Bolyea, 520 So.2d 562 (Fla.1988); Roy v. Wainwright, 151 *1261 So.2d 825 (Fla.1963). If a prisoner files a petition for writ of habeas corpus to assert a collateral challenge to his conviction, the petition will be denied with leave to file a motion under the comprehensive procedure in rule 3.850. See Fla. R.Crim. P. 3.850(h); Geiger v. State, 861 So.2d 93 (Fla. 1st DCA 2003); Spratling v. State, 851 So.2d 228 (Fla. 1st DCA 2003). Because a postconviction motion under rule 3.850 is the functional equivalent of a petition for writ of habeas corpus, the Legislature lacks the authority to define the circumstances in which it may be granted.
This point is illustrated by Allen v. Butterworth, 756 So.2d 52 (Fla.2000), a case in which the supreme court declared unconstitutional a portion of section 924.055, Florida Statutes (2000), the Death Penalty Reform Act. Among other things, the Act set a time limit for filing a postconviction motion in a capital case. The court concluded that the Legislature lacked authority to place time limits on postconviction relief because the right to relief is the equivalent of the right to file a petition for writ of habeas corpus.
Rule 3.853 affords a different kind of postconviction remedy, but in this context, it is no different from rule 3.850 or rule 3.800. Although the rule deals with a modern scientific subject, it affords the same kind of remedy that would have been available by habeas corpus. If we had no statute or rule authorizing postconviction DNA testing, the court would still have the power to hear a petition for writ of habeas corpus, and the court would still have the right to decide what evidence is to be produced and admitted at the hearing on the petition.
The outcome of this case is controlled by a specific grant of constitutional power to issue writs of habeas corpus, but even if that were not the case, we would likely reach the same result. Whether a judgment of guilt should be overturned on the ground that it was in error is essentially a judicial function. It follows that the courts have judicial authority under the general grant of judicial power in Article V of the Florida Constitution to determine the circumstances in which a conviction should be vacated.
This point is illustrated by the supreme court's decision in Goodwin v. State, 751 So.2d 537 (Fla.2000), a case involving the harmless error standard in criminal appeals. Section 924.051(7), Florida Statutes, states that "the party challenging the judgment or order of the trial court has the burden of demonstrating that prejudicial error occurred in the trial court," but the rule applied in appellate courts is just the opposite. In State v. DiGuilio, 491 So.2d 1129 (Fla.1986), the court held that if the defendant demonstrates that an error occurred at trial, the burden is on the state to show beyond a reasonable doubt that the error was harmless. The court reaffirmed this rule in Goodwin, despite the language to the contrary in section 924.051(7). As the court explained, "the Legislature cannot relieve the appellate courts of their independent and inherent obligation to assess the effect of the error on the verdict." Id. at 544, 545.
Whether a conviction is vacated on a postconviction motion or reversed on direct appeal, the result is the same. The only difference is that the action is taken by a different court. In a postconviction hearing, as in a direct appeal, the court is reviewing earlier judicial proceedings to determine whether an error was committed. The review process is no less a judicial function because it is performed in a trial court as opposed to an appellate court. In either case, the process is essentially a judicial function.
*1262 The same principle could be applied to any proceeding that is designed to test the validity of a conviction. For example, the decision to grant a new trial in a criminal case is one that is unquestionably within the province of the courts. The grounds for a new trial are set forth in rule 3.600 of the Florida Rules of Criminal Procedure, and there is no comparable statute on the subject.[1] The Legislature has not attempted to define the circumstances in which it would be proper to grant a new trial in a criminal case, and the absence of legislation is an apparent recognition of the fact that the issue is one for the courts.
For these reasons, we conclude that rule 3.853 of the Florida Rules of Criminal Procedure is a proper exercise of judicial power and that it does not violate the separation of powers provision of the Florida Constitution. Because the defendant's motion was sufficient on its face to meet the requirements of the rule, the order summarily denying the motion must be reversed. On remand, the trial court may take any action authorized by 3.853(c) to determine whether the allegations of the defendant's motion are true and, if so, whether he is entitled to DNA testing.
Reversed and remanded.
BOOTH and BROWNING, JJ., Concur.
NOTES
[1] Florida once had a statute setting forth the grounds for obtaining a new trial in a criminal case, but it was repealed in 1970, shortly after the adoption of the Florida Rules of Criminal Procedure. See Ch. 70-339, § 180, Laws of Fla. (repealing Chapter 920). Although there is still a statute pertaining to release on bail after the denial of a motion for new trial, it does not address the grounds for new trial. See § 924.065, Fla. Stat. (2003).