841 So.2d 390 (2003)
Charles ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. SC95773.
Supreme Court of Florida.
January 16, 2003.
Rehearing Denied March 14, 2003.
*394 Carey Haughwout, Public Defender, and Richard B. Greene, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Appellant.
Charlie J. Crist, Jr., Attorney General, and Debra Rescigno and Melanie A. Dale, Assistant Attorneys General, West Palm Beach, FL, for Appellee.
PER CURIAM.
We have on appeal a judgment of conviction of first-degree murder and a sentence of death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the conviction and sentence.
The record reveals the following facts. In 1980, Charles Anderson married Edwina. At the time of the marriage, Edwina had a five-year-old daughter (Keinya) from a previous relationship. In 1992, the Miami police became aware that Anderson was sexually abusing Keinya. He subsequently pled to eleven counts of attempted capital sexual battery and was sentenced to probation. One of the conditions of the probation was that he have no contact with Keinya. If Anderson violated probation, he faced the possibility of life in prison.
Despite the conditions of his probation, witnesses testified that Anderson continued to have contact with Edwina and Keinya. Apparently he spent several nights a week at Edwina's house. On Wednesday, January 12, 1994, Keinya was supposed to leave her job at Publix at 6 p.m., yet she did not return home until much later. A Publix employee by the name of Patrick Allen drove Keinya home. After dropping Keinya off, Allen realized that he was being followed by an individual in another car. Allen ultimately eluded the individual. When Allen was later shown photographs of Anderson's car, he was able to verify that the car that chased him belonged to Anderson.
Two nights later, on Friday, January 14, Allen brought Keinya home again. Anderson was sitting in his car waiting for Keinya to return, and as soon as Keinya got out of Allen's car, Anderson's car darted toward Allen. Another chase ensued, and this time Allen fired several gunshots at Anderson during the chase. When Anderson returned home, he and Keinya got into a heated argument. A neighbor testified that she overheard Anderson say to Keinya, "You told him. Why was he shooting at me?" and that Keinya responded, "I didn't tell him nothing." A cousin who was present during the argument testified that Anderson hit Keinya. Keinya then grabbed a knife and said, "Let me call the police." She proceeded to dial 911, but when the operator picked up, Keinya hung up the phone. The 911 operator called back, but was unable to get an answer and therefore a police car was sent to the house. When the police arrived, both Anderson and Edwina went outside and talked to the police. Keinya locked herself in her room. Anderson and Edwina convinced the police that everything was okay and the police left. Keinya's cousin testified that after the police left, Anderson walked to the room where Keinya was hiding and said that he was going to wait in Publix for twenty-four hours that if he could not get Patrick, then he *395 would come after her. Although Keinya was supposed to work on Saturday, she did not go to work because she was scared.
Keinya did go to work on Sunday, January 16, 1994. Her time card revealed that she left work at 6:01 p.m. Allen testified that he saw Anderson's car waiting outside Publix.
On that same day, John Gowdy and Amelia Stringer were driving north on U.S. 27. Gowdy testified that he saw someone on the side of the road at approximately 7 p.m. Although it was dark at the time, Gowdy was able to see the person in the grass median between the northbound and southbound lanes. Gowdy observed the car in front of him make a U-turn and he did the same thing. Gowdy then witnessed the car in front of him swerve into the median and then back into the lane, apparently running over the person. Gowdy immediately reported the incident to the police. Gowdy described the suspect's car as a blue/gray four-door. Anderson's car is dark blue with a gray top and has two doors. Stringer, who was in the car with Gowdy, saw the person in the median lie down in the grass and then sit up. She also witnessed the car in front of them run over the person in the median.
When the police arrived at the scene, they discovered blood on the pavement, some clothing items, and a name tag which read "Keinya." Items were found in the northbound lane and in the median near the southbound lane. Four tire impressions were taken from the scene. Keinya's dead body was found on Monday, January 17, by a fishing camp in the Everglades.
About a week after the murder, Anderson voluntarily agreed to be interviewed by the police. At one point during the interview, Anderson responded that he did pick up Keinya from work on Sunday night, but that he did not kill her. Within seconds of making this statement, Anderson recanted, claiming that he was being facetious. Anderson consented to a search of his car, although the police already had a warrant. The police took impressions of the car's tires. An expert testified that of the four impressions taken from the scene, one could not have been made by Anderson's tires, one was consistent with Anderson's tires, and the other two impressions were of no value. There was damage to Anderson's radiator, the splash guard was cracked, and an area under the car appeared to have been wiped. Another expert testified that grease marks found on Keinya's jacket could have been made by two coils from underneath Anderson's car. That expert also stated that two other coils from Anderson's car could not have made the grease marks. Several spots in and under Anderson's car were suspected to have blood. There was a positive presumptive result from the car's splash pan, but the police could not get any DNA results from this spot, meaning that it could have been human blood or animal blood. However, a spot of blood on Anderson's car seat matched Keinya's DNA. Finally, a number of fibers were found under Anderson's car. An expert testified that one of the fibers was consistent with fibers from Keinya's pants. Twelve other fibers taken from the car did not match Keinya's clothing.
During the trial, the parties agreed to the following stipulation, which was read to the jury:
It has been stipulated between parties that Keinya Smith is dead. That she died on January 16, 1994. And that she died as a result of blunt force trauma inflicted by a motor vehicle. It is further stipulated between parties that the items of evidence found on U.S. 27 by Lieutenant Vaughn and Detective Foley, including jewelry, blood stains, name *396 tags and hair and scalp, originated from Keinya Smith.
The State also presented the testimony of Anderson's probation officer, Lisa White, who stated that Anderson was on probation for eleven counts of attempted capital sexual battery on Keinya. White further stated that shortly after Keinya's body was found, Anderson contacted her and asked whether he could have his family back now that Keinya was dead.
Anderson did not put on any evidence during the guilt phase. At the conclusion of the guilt phase, the jury convicted Anderson of first-degree murder.
During the penalty phase, the State presented the testimony of the medical examiner, who testified that in addition to various other injuries, Keinya's neck was fractured when she was run over by the car, and the fractured neck led to rapid unconsciousness and death. The medical examiner stated that survival following the incident was seconds to minutes at the most. State witness Mitzy Clark testified that on the night of the murder, she was driving on U.S. 27 when she saw a person lunge at her car, trying to get Clark to stop. Clark stated that she did not stop because she was scared. The State also presented the testimony of Edwina, who described the circumstances of Keinya's sexual abuse. Edwina made it clear that Anderson not only attempted, but actually completed the crime of sexual battery:
Q: Did [Keinya] tell you that [Anderson] inserted his penis inside her vagina on several occasions?
A: Yes.
Edwina also testified that on the Friday before the murder, Anderson said, "I'm going to prison, but somebody is going to be dead, I bet you that." Finally, Edwina stated that Anderson called her on the day of the murder, asked if Keinya was working that day, and asked what time Keinya got off work. Officer Estopinan, the officer who investigated the previous sexual batteries, also testified about the circumstances of Keinya's sexual abuse.
The defense called a number of penalty-phase witnesses who described Anderson's childhood and subsequent addiction to drugs. Anderson also testified on his own behalf. During the course of his testimony, Anderson admitted that he sexually abused Keinya.
The jury ultimately recommended death by an eight-four vote. The trial court found the following five aggravators: (1) Anderson had a previous conviction of a violent felony (the attempted sexual batteries), (2) the murder was committed while engaged in the commission of a felony (kidnapping), (3) the murder was committed to avoid arrest, (4) the murder was heinous, atrocious, or cruel, and (5) the murder was committed in a cold, calculated and premeditated manner without any pretense of legal justification. The trial court concluded that Anderson failed to establish the statutory mental mitigators. The court found the following nonstatutory mitigators: (1) Anderson suffers from sexual dementia (minimal weight), (2) Anderson confessed to his sexual relationship with Keinya during drug addiction counseling (medium weight), (3) Anderson suffered from drug addiction (minimal weight), (4) Anderson comes from a good family (minimal weight), (5) Anderson was a good child (minimal weight), (6) Anderson helped Edwina take care of his three natural children (minimal weight), (7) Anderson loves his children (minimal weight), (8) Anderson sends gifts to his kids while in custody (minimal weight), (9) Anderson is a very caring person (minimal weight), (10) Anderson served in the Coast Guard for five years (minimal weight), (11) society would be protected by Anderson serving a life sentence (minimal weight), *397 (12) Anderson earned money playing the market while in custody and therefore can still be a productive member of society (minimal weight), and (13) Anderson has a gift for poetry and can help men who end up in prison (minimal weight). The trial court sentenced Anderson to death.
Anderson presents thirteen claims in this appeal.[1] We address the guilt-phase claims first. In his first claim, Anderson argues that the evidence is insufficient to support first-degree murder. The trial judge instructed the jury on both premeditated and felony murder, and the jury returned a general verdict of first-degree murder. As explained in issue ten below, we agree with Anderson that the judge erred in denying his motion for judgment of acquittal as to felony murder premised on a kidnapping theory. Although the trial judge erred in this regard, we do not reverse Anderson's first-degree murder conviction because the judge correctly denied the motion as to premeditation. See Mungin v. State, 689 So.2d 1026, 1029 (Fla.1995).
A motion for judgment of acquittal should be granted in a circumstantial evidence case if the State fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. See Gore v. State, 784 So.2d 418 (Fla.2001). After reviewing the record in this case, we conclude that the State presented sufficient evidence of premeditated murder and there is no reasonable hypothesis to the contrary. A witness testified that Anderson threatened Keinya two days prior to her murder. Other witnesses that observed the incident explained to the jury the manner in which the suspect's car performed a U-turn and proceeded to mow down Keinya as she lay in the median. Forensic evidence linked Anderson's car to the scene. Thus, although the trial court erred in denying the motion for judgment of acquittal as to felony murder, we find this error harmless since the jury properly convicted Anderson of first-degree murder under the theory of premeditation. See Mungin, 689 So.2d at 1029.
In his second claim, Anderson asserts that the trial court erred in admitting collateral bad act evidence. Prior to trial, Anderson moved to prevent the State from introducing evidence regarding his probation for the attempted capital sexual batteries on Keinya. The State argued that this evidence was relevant for two reasons. First, the State claimed that this evidence was necessary to explain the entire context of the crime to the jury. Second, the State contended that the convictions were necessary to establish motive. The trial court denied Anderson's motion. During the guilt phase of the trial, State witness Lisa White, Anderson's probation officer, testified that Anderson was on probation for *398 eleven counts of attempted sexual battery on Keinya.
Section 90.404(2)(a), Florida Statutes (1993), provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Anderson acknowledges that the fact that he was on probation was admissible. He claims, however, that it was unnecessary to inform the jury about the underlying crime. He argues that the attempted sexual battery convictions were overly prejudicial and became a feature of the case. Anderson relies on this Court's decision in Garron v. State, 528 So.2d 353 (Fla.1988), to support his position. In Garron, a first-degree murder defendant challenged testimony concerning previous sexual misconduct:
The next issue raised by appellant involves the admission of certain "similar fact" evidence pursuant to the Florida Evidence Code, section 90.404(2), Florida Statutes (1981), and Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). The evidence admitted includes the testimony of Linda Garron that appellant had previously engaged in alleged sexual misconduct with his two stepdaughters. This activity took place more than two years prior to the killings. The state claims that the evidence is relevant to show appellant's motive for killing his wife and stepdaughter in that he was attempting to prevent his wife from taking the stepdaughters away to avoid his improper advances.
. . . .
In closely examining similar fact evidence, one critical issue of concern is whether the evidence is being used to prove any relevant issue besides character. Here, the state's theory is that the evidence of the alleged misconduct is relevant to appellant's motive for the murders. The focal point of analysis is whether there is actually any similarity between the alleged misconduct and the crime for which appellant stands trial. That is, does the "similar" fact bear any logical resemblance to the charged crime. The state claims that Linda Garron's testimony that prior to the shootings the appellant touched her thigh sufficiently establishes the requisite connection between the prior bad acts and the present crime. We believe that this "connection" is far too tenuous to support the admission of the similar fact evidence. Even if there were similarities between the events, they are in no way relevant to show motive.
In Williams, the similar fact evidence involved evidence that the defendant, who was charged with rape, had previously committed the same act in precisely the same manner. Williams had hidden in the back seat of the victim's car, waited for the victim to return, and raped her. The state produced a witness who testified that Williams waited in her car and committed the identical act in the same parking lot at about the same hour as the attack on the victim. This Court allowed the evidence to be admitted under the theory that it showed Williams' plan or pattern of operation. In this case, however, the alleged sexual misconduct in no way resembles the act for which appellant was convicted. Moreover, the prior acts are far too remote in time to support any allegation that they could have provided appellant with a motive for the killings.

*399 As such, the only possible issue for which this evidence could be used is to prove character and propensity. As the statute states, these issues are not valid grounds for the admission of similar fact evidence. A danger of unfair prejudice arises if alleged acts of sexual misconduct are put before the jury when such evidence is not relevant to prove a material issue. This danger renders the evidence inadmissible. Here, the inflammatory effect of this type of evidence played a role in the conviction of appellant.
Garron, 528 So.2d at 357-58 (footnote omitted). We find Garron distinguishable from the present case. Contrary to the evidence in Garron, the contested evidence in the present case was not too remote or irrelevant. Rather, the evidence demonstrated Anderson's ongoing possessive relationship with Keinya. This was bolstered by Andronda Brown's testimony that Anderson would often screen Keinya's incoming telephone calls. When considered together, all of this evidence helped explain Anderson's motive for the murder. In this regard, the present case is similar to our recent decision in LaMarca v. State, 785 So.2d 1209 (Fla.2001). In that case, the defendant murdered his daughter's husband and proceeded to rape his daughter (Tonya) hours later. We rejected the defendant's claim that the trial court erred in admitting the evidence regarding the rape:
In the present case, the trial court did not abuse its discretion in admitting two pieces of inextricably intertwined evidence: (1) testimony that appellant told the victim that he had done something to Tina LaMarcaappellant's stepdaughterthat caused her to cease living with him; and (2) testimony that appellant raped Tonya. The two pieces of evidence must be viewed together. The first piece of disputed testimony consisted of Tina affirming that there was an "incident" between appellant and herself and her testimony that what appellant "had done" to her prompted her to stop living with him. The appellant had allegedly raped Tina, although that was not expressly stated to the jury. Tina's testimony was relevant because it puts into context the victim's statement to appellant to keep away from Tonya. Absent the nexus to the "incident" between appellant and Tina, the jury would have been left wondering why the victim told appellant to stay away from Tonya. Thus, Tina's testimony was relevant to prove motive and premeditation, and was focused and limited.
The second part of the contested testimony was provided by Tonya, who stated that after appellant and the victim left the bar, appellant returned alone and told her that she had to meet the victim at appellant's relative's house. They drove there and found the house unoccupied, and appellant raped her. Afterwards, appellant asked Tonya to leave Florida with him and told her that her feelings for the victim would not last.
Evidence that appellant raped his daughter and did something to cause Tina to move out puts into context appellant's statements about his wanting Tonya to leave Florida with him and that her feelings for her husband (the victim) would not last. The testimony is therefore relevant to show appellant's motive in killing the victimto have Tonya for himself. If the testimony as to the rape and Tina being forced to move out by appellant is omitted, you simply have a father asking his daughter to leave Florida and stating that her feelings for her husband would go away. Thus, absent the testimony of Tonya and Tina relative to appellant's actions, it *400 would not be clear that the father desired his daughter in a way that would exclude his son-in-law and why the son-in-law wanted to separate appellant and Tonya and told appellantjust hours before appellant killed himthat he could not be near his daughter because he knew of the "incident" with Tina. Thus, appellant's incestuous desire for his daughter and the victim's demand that appellant stay away are relevant to prove appellant's motive to kill his son-in-law. The motive contradicts the defense strategy of attempting to prove that Tonya killed her husband and tends to prove appellant's premeditation. Thus, the trial court did not abuse its discretion in admitting the evidence.
LaMarca, 785 So.2d at 1213. Similarly, we conclude that the trial court in the instant case did not err in permitting White to testify that Anderson was on probation for eleven counts of attempted sexual battery on Keinya.
Finally, Anderson claims that the trial court erred in admitting evidence regarding (1) the alleged incident in which Anderson chased Patrick Allen in his car and (2) the alleged incident in which Anderson struck Keinya. We find no merit to either of these arguments, as both incidents explained the nature of Anderson's relationship with Keinya just prior to the murder and further put into context the reason for Anderson's threatening remarks toward Keinya. Both incidents were therefore relevant to prove motive and were inextricably intertwined with the murder.
In claim three, Anderson alleges error concerning the testimony of Kevin Vaughn, an investigator for the Florida Highway Patrol. Lieutenant Vaughn testified as follows:
Vaughn: So I knew I had another crime scene on my hands and it wasn'tit is not typical that you would find evidence on both sides of the road.
Defense: I object to what is typical or not typical, Judge.
Court: You want to lay a foundation for that? I will sustain it at this time.
State: Do you have any training in traffic homicide investigations?
Vaughn: Yes, I do.
State: How much training do you have in that area?
Vaughn: I attended aI have all the certificates everywhere I attended schools at.
State: Would you just tell me what those are?
Vaughn: Okay. Besides having the basic forty hour traffic accident investigation in the Florida Highway Patrol Academy I also attended an advanced traffic homicide investigation school. Excuse me just a minute while I go through these.
Defense: My objection is based on relevancy, not on lack of a predicate. I think it is irrelevant what is typical or atypical. Mr. Anderson's on trial here for his life. It doesn't matter what goes on in other cases. It matters what is going on in thisthis case.
Court: Overruled. I will allow him to testify.
Vaughn: It is not typical we would find evidence of a hit and run on both sides of the road ninety feet apart, and essentially where the evidence is all southbound, there is evidence also that is north of the southbound evidence. So how would that evidence get there unless something had transpired previously? And it appeared that the evidence that we located and found was connected with the evidence that we found southbound. So at that time I felt that maybe this was *401 not a traffic hit and run, a traffic case. I thought it wasSo Iit was anot a traffic homicide at this point. I didn't think it was a traffic homicide, because of the circumstances of the evidence being in different locations so far apart in different directions. So I felt that we needed the assistance of the Broward Sheriff's Office homicide unit to see if we could get a homicide detective out there.
Anderson claims that Vaughn's testimony regarding what is typical was improper. Anderson relies on cases which hold that evidence regarding past crimes that did not involve the defendant cannot be introduced to demonstrate that the defendant committed the crime at issue in the present case. For example, in Nowitzke v. State, 572 So.2d 1346, 1355-56 (Fla.1990), this Court held that it was improper for the State to elicit testimony from a police officer about the criminal behavior pattern of drug addicts. However, the instant case is distinguishable from Nowitzke. Vaughn did not offer any testimony regarding past crimes or criminal behavior patterns. Rather, Vaughn was giving his opinion, based on his experience, that hit and runs are not normally found on both sides of the road. This testimony was relevant to establish that the victim's death was not the result of an accident. Hence we find no merit to this claim.
In Anderson's fourth claim, he argues that the trial court erred in allowing nonresponsive opinion testimony. This claim concerns the following testimony from witness Amelia Stringer:
State: What did you see next?
Stringer: Well, while John was waiting to gethe was driving. While he is waiting to get back onto U.S. 27 to go south, I looked out the back window and I sawI didn't know who it was. But I saw this person kind of sitting up, like they arelike if you were laying down and you are sitting yourself up.... So I saw that out of the back passenger window. And then as we were getting ready to get in line next toyou know, get in between traffic, like waiting for no cars to come, is when I saw this car in front of us run over whoever that was that was there trying to get up. And that surprised me. It shocked me. And II said, you know, "They ran over them." And the car that ran over that person continued. And again, traffic is still going, so that the car got off ofout of traffic and ran over this person and then got back in traffic. And that is what was shocking, because the other cars didn't blowor they didn't have to swerve or stop. And to me thatthat made it that it wasn't an accident, that it was intentional, becauseand I am only using myself as an example
Defense: I object as non-responsive.
State: I asked her what happened next....
Court: I am going to allow it.
(Emphasis added.) On appeal, Anderson claims that Stringer gave impermissible opinion testimony regarding the intent of the driver of the vehicle. In response, the State argues, and we agree, that this issue has not been preserved for review. "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." Tillman v. State, 471 So.2d 32, 35 (Fla.1985). At trial, Anderson objected to the testimony as being nonresponsive. On that ground, the trial court correctly overruled the objection. Anderson did not assert at trial that the testimony was improper *402 opinion testimony. Therefore, he is barred from raising this argument on appeal.
In claim five, Anderson asserts that the trial court erred in admitting two photographs during the guilt phase. Both photographs depicted Keinya's body when it was found by the fishing camp in the Everglades. The first photograph shows Keinya's bare buttocks and the second shows Keinya only wearing a bra. Anderson claims that neither photograph was relevant given the stipulation that Keinya died as a result of blunt force trauma inflicted by a motor vehicle. Anderson further claims that the photos were prejudicial because they injected a sexual element into the case.
Photographs are admissible to the extent that they fairly and accurately establish a material fact and are not unduly prejudicial. See Pangburn v. State, 661 So.2d 1182, 1188 (Fla.1995). Absent a clear showing of abuse of discretion by the trial court, a ruling on admissibility of such evidence will not be disturbed. See Gudinas v. State, 693 So.2d 953, 963 (Fla.1997).
Both photographs in the present case show the location and condition of Keinya's body when it was found. See Jones v. State, 648 So.2d 669, 679 (Fla. 1994) (holding there was no error in admitting photographs that were relevant to show the condition and location of the body when discovered). The fact that Keinya's buttocks and bra were exposed does not render the photographs inadmissible. See Grey v. State, 727 So.2d 1063, 1065 (Fla. 4th DCA 1999) (holding that trial court did not err in admitting photograph depicting injuries of victim's head which extended down to include her naked breasts).
Anderson claims that the photographs were irrelevant in light of the following stipulation which was read to the jury:
I am going to read to you a stipulation. It states that it has been stipulated betweenbetween the parties that Keinya Smith is dead. That she died on January 16, 1994. And that she died as a result of blunt force trauma inflicted by a motor vehicle. It is further stipulated between the parties that the items of evidence found on U.S. 27 by Lieutenant Vaughn and Detective Foley, including jewelry, blood stains, name tags and hair and scalp, originated from Keinya Smith.
The stipulation relied on by Anderson does not apply to the first photograph because that photograph was entered into evidence prior to the stipulation. Further, despite the stipulation, the second photograph was still relevant because it showed the condition of Keinya's pants and bra after she was run over. The State later attempted to prove that the fibers from Keinya's pants and bra were found under Anderson's car. The fiber evidence was not covered by the stipulation. Hence, the trial court did not abuse its discretion by admitting the photographs.
In Anderson's sixth claim, he alleges that the trial court erred in denying his motion for mistrial that he made in response to a comment made by the State during the guilt-phase closing arguments. During Anderson's closing argument, defense counsel pointed to the fact that Anderson voluntarily spoke to the police and consented to having his car searched as proof that Anderson was not guilty ("he didn't do anything wrong; he had nothing to hide"). The prosecutor's alleged improper drug dealer comment was made in response to defense counsel's argument:
The problem becomes, if you refuse to go to the police station, more attention is drawn to you, because as we try to *403 analyze the situation, "Well, that is how a guilty person would act, so I got to go. Oh, they want to look at my car." How many drug traffickers have you heard about that say "Go ahead, search my car", as they are driving kilos of cocaine out of Miami
Anderson objected, claiming the comment referred to matters outside the evidence. The court sustained defense counsel's objection and instructed the jury to disregard the comment. Anderson argues on appeal that the trial court should have granted his motion for mistrial.
A ruling on a motion for mistrial is within the trial court's discretion. See Hamilton v. State, 703 So.2d 1038, 1041 (Fla.1997). The use of a harmless error analysis under State v. DiGuilio, 491 So.2d 1129 (Fla.1986), is not necessary where the trial court recognizes the error, sustains the objection, and gives a curative instruction. See Goodwin v. State, 751 So.2d 537, 547 (Fla.1999). Rather, the correct appellate standard of review is whether the trial court abused its discretion in its denial of a mistrial. See id. A mistrial is appropriate only where the error is so prejudicial as to vitiate the entire trial. See Hamilton, 703 So.2d at 1041.
In the present case, we find that the trial court did not abuse its discretion in denying Anderson's motion for mistrial. It cannot be said that the prosecutor's comment vitiated the entire trial. See Spencer v. State, 645 So.2d 377, 382-83 (Fla.1994) (motion for mistrial denied even though the prosecutor referred, in closing argument, to a fact that was not in evidence and that had been ruled inadmissible by the court; prosecutor's single comment that the victim was carrying a rifle around her house because she was afraid of the defendant did not deprive the defendant of a fair trial); Pope v. Wainwright, 496 So.2d 798, 803 (Fla.1986) (comment outside the evidencethat the defendant had a preference for deathwas clearly improper, but standing alone or read in combination with other improper comments cannot be said to have unduly affected the jury's weighing process).
Anderson also complains about a number of other comments made by the prosecutor during his closing guilt-phase argument. Anderson did not object to any of the alleged improper comments and therefore he must resort to claiming fundamental error, defined as error that reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error. See Keen v. State, 775 So.2d 263, 279 (Fla.2000). After considering each of the comments, we find that none of them amounted to fundamental error. See Breedlove v. State, 413 So.2d 1, 8 (Fla.1982) ("Wide latitude is permitted in arguing to a jury."); Thomas v. State, 326 So.2d 413, 415 (Fla.1975) ("[C]omments of counsel in the progress of a trial before a jury are controllable in the judicial discretion of the trial court, and an appellate court will not interfere with the exercise of such discretion unless a clear abuse thereof has been made to appear.").
We have also reviewed the State's entire closing argument, with focus given to all of the preserved and nonpreserved alleged improper comments. As this Court stated in Card v. State, 803 So.2d 613, 622 (Fla.2001), "We do not examine allegedly improper comments in isolation. Rather, the Court examines the totality of the errors in the closing argument and determines whether the cumulative effect of the numerous improprieties deprived the defendant of a fair ... hearing." With this in mind, we conclude that the alleged improper comments, taken both individually *404 and collectively, did not deprive Anderson of a fair trial.
In his seventh claim, Anderson argues that the trial court erred in permitting the State to proceed on the theory of felony murder when the indictment only charged first-degree murder. The State brought up felony murder for the first time during the charge conference and Anderson argues that he was prejudiced by a lack of notice. Anderson acknowledges that this claim was decided adversely to him in Knight v. State, 338 So.2d 201, 204 (Fla.1976). See also Kearse v. State, 662 So.2d 677, 682 (Fla.1995). He offers no valid reason for receding from Knight. Hence there is no merit to this claim.
After reviewing all of the evidence in the record, we find that there is competent, substantial evidence to support Anderson's conviction for first-degree murder. The remainder of the alleged claims of error concern the penalty phase.
In claim eight, Anderson complains about several remarks made by the State during its closing penalty phase argument. Anderson acknowledges that he did not object to any of the comments. Regardless of the lack of objection, he claims that the comments rose to the level of fundamental error. We disagree. As we did in issue six, we have considered all of the alleged improper penalty-phase comments to determine whether the cumulative effect of the comments deprived Anderson of a fair penalty phase hearing. We find that the alleged improper comments did not compromise the integrity of the judicial process.
In Anderson's ninth claim, he alleges that the trial court erred in admitting three photographs during the penalty phase. The first shows Keinya's skull, the second shows Keinya's back and thighs, including her buttocks, and the third shows Keinya's knees, pelvic area, and stomach. The photographs were taken at the medical examiner's office. As he did in claim five, Anderson argues that this introduced a sexual element into the case.
As set forth in the analysis in issue five, photographs are admissible to the extent that they fairly and accurately establish a material fact and are not unduly prejudicial. The photographs in question were all relevant during the penalty phase. All of the photographs helped explain the nature of Keinya's injuries and were therefore relevant to establish HAC. Additionally, the photograph of Keinya's skull was utilized by the State to support the finding that the murder was committed in the course of felony (kidnapping)that Keinya jumped out of Anderson's car, which resulted in an injury to her skull, consistent with the hair and scalp fragments found on the northbound lane. Thus, the trial court below did not abuse its discretion in admitting the photographs.
In claim ten, Anderson maintains that the evidence did not support the aggravating circumstances found by the trial court in the sentencing order. A trial court's ruling on an aggravating circumstance will be sustained on review as long as the court applied the right rule of law and its ruling is supported by competent, substantial evidence in the record. See Almeida v. State, 748 So.2d 922, 932 (Fla.1999). We address each of the aggravating circumstances in turn.

1. That the Murder Was Committed to Avoid Arrest
In Consalvo v. State, 697 So.2d 805 (Fla.1996), this Court stated the application of this aggravator as follows:
Typically, this aggravator is applied to the murder of law enforcement personnel. However, the above provision has been applied to the murder of a witness *405 to a crime as well. In this instance, "the mere fact of a death is not enough to invoke this factor.... Proof of the requisite intent to avoid arrest and detection must be very strong in these cases." In other words, the evidence must prove that the sole or dominant motive for the killing was to eliminate a witness. Mere speculation on the part of the state that witness elimination was the dominant motive behind a murder cannot support the avoid arrest aggravator. Likewise, the mere fact that the victim knew and could identify defendant, without more, is insufficient to prove this aggravator.
Additionally, a motive to eliminate a potential witness to an antecedent crime can provide the basis for this aggravating circumstance. And, it is not necessary that an arrest be imminent at the time of the murder. Finally, the avoid arrest aggravator can be supported by circumstantial evidence through inference from the facts shown.
Id. at 819 (citations omitted). Applying this standard to the present case, we find that the State has not established the avoid arrest aggravator beyond a reasonable doubt. At the time of the murder, Anderson was on probation, and one of the conditions of his probation was that he have no contact with Keinya. However, Anderson ignored this condition and had frequent contact with Keinya. The State's theory was that Anderson murdered Keinya in order to avoid being sent to prison for violating his probation, as Keinya could turn Anderson in at any time based on his contact with her. While this theory is possible, it is also possible, based on the record, that Anderson simply murdered Keinya out of anger pursuant to their dispute on Friday, January 14, or that the murder stemmed from Anderson's possessive relationship with Keinya. The State has failed to establish that the "sole or dominant motive" for the murder was to eliminate Keinya as a witness or to avoid arrest.

2. That the Murder Was Committed in the Course of a Felony
The State has also failed to establish that the murder was committed during the course of a felony. The State's theory of this aggravator was that Anderson kidnapped Keinya prior to murdering her. To establish this aggravator, the State needed to prove beyond a reasonable doubt each of the elements of kidnapping.[2] The State has failed to do so in this case.
First, the State failed to establish that Keinya was abducted against her will. The State's theory was that Anderson picked up Keinya from work on Sunday, January 16, 1994. Patrick Allen testified that he saw Anderson outside of Publix on that day. However, the record also establishes that Anderson would often pick up Keinya from work and therefore it would not be unusual for Keinya to get in Anderson's car willingly.
Further, the trial court's order states the following:
It is clear that this ride turned against Keinya Smith's will when she jumped out of the defendant's moving car. She *406 jumped hitting the back of her head on the pavement with such force as to leave her scalp and hair on the pavement. She then made her way across the median to the southbound lane and attempted, without success to flag down Mitzi Clark's van. The evidence strongly suggests Keinya Smith was not pushed out of the defendant's car, but jumped out The evidence further shows she made her way across the median, attempting to get away from the defendant after she jumped out of his moving car.
(Emphasis added.) Contrary to the trial court's finding, there is no evidence in the record to indicate whether Keinya jumped out or was pushed out. The State argued that Anderson was driving Keinya to a location where he could kill her and that Keinya must have realized this and therefore jumped out. But there was no evidence presented to support this theory. It is just as likely that Anderson's plan was to push Keinya out of the car and then run her over, or that Anderson and Keinya simply got into an argument which ended in her being pushed out of the car. Since the State failed to prove this aggravator beyond a reasonable doubt, the trial court erred in finding this aggravator.

3. That the Murder Was Cold, Calculated, and Premeditated
In order to prove the existence of the CCP aggravator, "the State must show a heightened level of premeditation establishing that the defendant had a careful plan or prearranged design to kill." Bell v. State, 699 So.2d 674, 677 (Fla.1997). There is competent, substantial evidence in the record to support CCP in this case. Keinya's cousin testified that two days before the murder, Anderson said "he was going to wait in Publix for 24 hoursif he can't get Patrick, then he's coming after her (Keinya)." Edwina testified that on the same night, Anderson said that "he was going to prison, but someone was going to be dead, I bet you that." Edwina also testified that she spoke to Anderson on the day of Keinya's murder and Anderson asked whether Keinya had gone to work that day and asked what time she would get off. Hence, there is evidence in the record that Anderson had a prearranged designed to kill Keinya at least 48 hours prior to her death.

4. That the Murder was Heinous, Atrocious, or Cruel
In order for HAC to apply, the murder must be conscienceless or pitiless and unnecessarily torturous to the victim. See Hartley v. State, 686 So.2d 1316,1323 (Fla. 1996). A finding of HAC is appropriate only when a murder evinces extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another. See Cheshire v. State, 568 So.2d 908, 912 (Fla.1990).
The medical examiner testified that in addition to various other injuries, the victim's neck was fractured, and the fractured neck led to rapid unconsciousness and death. The medical examiner stated that survival following the accident was seconds to minutes at the most. Based on the record in this case, we find that the murder was conscienceless, pitiless, and unnecessarily torturous.

5. That the Defendant Had Been Convicted of a Prior Violent Felony
During the penalty phase, Edwina testified regarding the circumstances of Keinya's sexual abuse. Edwina made it clear that Anderson not only attempted, but actually completed, the crime of sexual battery on Keinya:

*407 Q: Did [Keinya] tell you that [Charles] inserted his penis inside her vagina on several occasions?
A: Yes.
Officer Estopinan, the officer who investigated the previous sexual batteries, also testified about the circumstances of Keinya's sexual abuse. Anderson contends that since he pled to attempted sexual battery, it was error to permit Edwina and Officer Estopinan to describe the details of a completed crime. To support his position, Anderson relies on Donaldson v. State, 722 So.2d 177 (Fla.1998). In that case, the State sought to establish the prior violent felony aggravator by presenting evidence regarding a previous murder for which Donaldson pled guilty as an accessory after the fact. The State tried to prove that Donaldson was actually a principal to the previous murder. On appeal, this Court held that the trial court erred in admitting and considering the evidence regarding the previous murder. We concluded, as a matter of law, that a conviction for accessory after the fact to a crime of violence may not be used as a vehicle to implicate the defendant as a principal in the prior underlying crime of violence under section 921.141(5)(b), Florida Statutes (1993).
Donaldson, however, is distinguishable from the present case. Anderson was not convicted as an accessory after the fact to the sexual batteries; rather, Anderson was convicted of eleven counts of attempted sexual battery. Although Anderson argues that attempt crimes can never qualify as prior violent felonies, this Court has never made such a finding. Whether a crime constitutes a prior violent felony is determined by the surrounding facts and circumstances of the prior crime. See Gore v. State, 706 So.2d 1328, 1333 (Fla. 1997). Hence, the trial court did not err in permitting the State to present evidence regarding the details of the attempted sexual batteries. Further, based on this evidence, the trial court did not err in concluding that the attempted sexual batteries qualified as prior violent felonies under section 921.141(5)(b), Florida Statutes (1993).
In conclusion, we hold that the trial court erred in finding the avoid arrest and committed in the course of a felony aggravators. Even if these aggravating factors were stricken, Anderson would not be entitled to relief. "Where an aggravating factor is stricken on appeal, the harmless error test is applied to determine whether there is no reasonable possibility that the error affected the sentence." See Jennings v. State, 782 So.2d 853, 863 n. 9 (Fla.2001). In the present case, if the avoid arrest and committed in the course of a felony aggravators were stricken, Anderson would still have three remaining aggravators: CCP, HAC, and prior violent felony. Based on the record in this case, there is no reasonable possibility that Anderson would have received a life sentence. See Reaves v. State, 639 So.2d 1, 6 (Fla.1994) ("We agree with Reaves that the deputy's death from gunshot wounds was not heinous, atrocious, or cruel.... We find this error to be harmless, however, in view of the two other strong aggravating factors found and relatively weak mitigation. There is no possibility that the jury would have recommended or the judge would have imposed a lesser sentence.") (footnote omitted).
In Anderson's eleventh claim, he contends that the death sentence is disproportionate in this case. Due to the uniqueness of the penalty, this Court addresses the propriety of all death sentences in a proportionality review. See Porter v. State, 564 So.2d 1060, 1064 (Fla.1990). In conducting this review, we make a comprehensive analysis in order to determine *408 whether the crime falls within the category of both the most aggravated and the least mitigated of murders, see Cooper v. State, 739 So.2d 82, 85 (Fla.1999), thereby assuring uniformity in the application of the sentence, see Urbin v. State, 714 So.2d 411, 416-17 (Fla.1998).
We do not find the death sentence disproportionate in the instant case. The court initially found five aggravators: (1) Anderson had a previous conviction of a violent felony (the attempted sexual batteries), (2) the murder was committed while engaged in the commission of a felony (kidnapping), (3) the murder was committed to avoid arrest, (4) the murder was heinous, atrocious, or cruel, and (5) the murder was committed in a cold, calculated and premeditated manner without any pretense of legal justification. As discussed in issue ten, supra, the second and third aggravators were inapplicable. However, we concluded that the proper finding of the remaining three aggravators renders the use of these two aggravators harmless.
The trial court concluded that Anderson failed to establish the statutory mental mitigators. The trial court found the following nonstatutory mitigators: (1) Anderson suffers from sexual dementia (minimal weight), (2) Anderson confessed to his sexual relationship with Keinya during drug addiction counseling (medium weight), (3) Anderson suffered from drug addiction (minimal weight), (4) Anderson comes from a good family (minimal weight), (5) Anderson was a good child (minimal weight), (6) Anderson helped Edwina take care of his three natural children (minimal weight), (7) Anderson loves his children (minimal weight), (8) Anderson sends gifts to his kids while in custody (minimal weight), (9) Anderson is a very caring person (minimal weight), (10) Anderson served in the Coast Guard for five years (minimal weight), (11) society would be protected by Anderson serving a life sentence (minimal weight), (12) Anderson earned money playing the market while in custody and therefore can still be a productive member of society (minimal weight), and (13) Anderson has a gift for poetry and can help men who end up in prison (minimal weight).
We have affirmed death sentences where there was even less aggravation than in the current case and somewhat comparable mitigation. See Geralds v. State, 674 So.2d 96, 105 (Fla.1996) (affirming death sentence where murder was HAC and committed during the commission of a robbery and both statutory and nonstatutory mitigation was afforded little weight); Davis v. State, 703 So.2d 1055, 1061-62, (Fla.1997) (affirming death sentence where murder was HAC and committed during the course of a sexual battery and nonstatutory mitigation was afforded some weight). Therefore, we find that death is a proportionate penalty in this case.
In claim twelve, Anderson argues that his sentence violates Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in which the United States Supreme Court held that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt, and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), in which the Supreme Court ruled that Apprendi is applicable in the death penalty context. In Ring, the Supreme Court found the Arizona capital sentencing statute to be unconstitutional "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for the imposition of the death penalty." Ring, 536 U.S. at 609, 122 S.Ct. at 2443. *409 Anderson contends that Florida's capital sentencing statute suffers the same constitutional infirmity. However, Anderson's claim has already been addressed by this Court and decided adversely to him. See Bottoson v. Moore, 833 So.2d 693 (Fla. 2002) (concluding that Bottoson was not entitled to relief under Ring).
In his final claim, Anderson asserts that the murder in the course of a felony aggravating circumstance is unconstitutional because it is an impermissible automatic aggravator. This claim has been rejected numerous times by this Court. See, e.g., Banks v. State, 700 So.2d 363, 367 (Fla. 1997).
Accordingly, for the reasons stated in this opinion, we affirm the conviction for first-degree murder and sentence of death.
It is so ordered.
WELLS and QUINCE, JJ., and HARDING, Senior Justice, concur.
PARIENTE, J., concurs as to the conviction and concurs in result only as to the sentence with an opinion, in which SHAW, Senior Justice, concurs.
ANSTEAD, C.J., and LEWIS, J., concur as to the conviction and concur in result only as to the sentence.
PARIENTE, J., concurring as to the conviction and concurring in result only as to the sentence.
I concur fully in the affirmance of the conviction in this case, but concur in result only as to the affirmance of the death sentence. One of the aggravating circumstances found by the trial court was a prior violent felony, based on convictions of attempted sexual battery of the same victim as in this case. In Bottoson v. Moore, 833 So.2d 693 (Fla.2002), and King v. Moore, 831 So.2d 143 (Fla.2002), we denied relief under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), to petitioners whose aggravating circumstances included prior violent felony convictions, in accord with the United States Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis supplied.) The Supreme Court extended Apprendi to capital sentencing schemes in Ring, but did not alter the exception for prior convictions. For this reason, I concur that Anderson is not entitled to relief under Ring.
SHAW, Senior Justice, concurs.
NOTES
[1] Anderson presents the following claims: (1) the evidence is insufficient for first-degree murder; (2) the trial court erred in admitting collateral bad act evidence; (3) the trial court erred in allowing a witness to testify concerning other traffic homicides; (4) the trial court erred in allowing nonresponsive opinion testimony as to the intent of the perpetrator; (5) the trial court erred in admitting inflammatory photographs during the guilt phase; (6) the trial court erred in denying Anderson's motion for mistrial during closing argument; (7) the trial court erred in allowing the State to proceed on a theory of felony murder; (8) the State's penalty phase argument was fundamental error; (9) the trial court erred in admitting inflammatory photographs during the penalty phase; (10) the evidence did not support the aggravating circumstances in this case; (11) the sentence is disproportionate; (12) the sentence violates Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and (13) the murder in the course of a felony aggravator is unconstitutional.
[2] Section 787.01(1)(a), Florida Statutes (1993), provides, in part:

The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.