940 So.2d 558 (2006)
Keith Tyrone COVERDALE, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-1558.
District Court of Appeal of Florida, Second District.
October 27, 2006.
*559 James Marion Moorman, Public Defender, and Ray Shaw, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Keith Coverdale appeals his judgment and sentence for aggravated stalking. We reverse and remand for a new trial.
The State charged Coverdale with aggravated stalking in violation of section 784.048(4), Florida Statutes (2003), allegedly occurring on or between May 2, 2003, and March 25, 2004. The information alleged that Coverdale
did knowingly, willfully, maliciously, and repeatedly follow, harass or cyberstalk Robyn Spencer, after an injunction for protection against repeat violence had been issued pursuant to s. 784.046, or an injunction for protection against domestic violence pursuant to s. 741.30, or after any other court imposed prohibition of conduct toward Robyn Spencer or the property of Robyn Spencer[.]
A jury trial was held in November 2004.
Ms. Spencer, a nurse, was married and working at a homeless shelter when she met Coverdale, who was residing at the shelter. She began a relationship with him, quit her job at the shelter, and ultimately was divorced from her husband of over twenty years. Coverdale moved in with Ms. Spencer, but the relationship became stormy. Ms. Spencer testified that she became frightened of Coverdale and obtained a domestic violence injunction (DVI) against him in March 2003. In May 2003, she had the DVI amended to include a no contact order.[1]
The State presented tapes of phone calls and numerous letters from Coverdale to *560 Ms. Spencer to show that he intended to harass her. Coverdale presented a defense that the letters he wrote were not malicious and were not meant to harass but served a legitimate purpose of trying to rekindle the relationship with Ms. Spencer. Part of the defense theory was that Ms. Spencer obtained the DVI to placate her family and friends, who did not approve of the relationship. Ms. Spencer admitted that she and Coverdale had broken up and then resumed their relationship many times, and she admitted that after she got the DVI and the no contact order she allowed Coverdale to reside with her and she had sexual relations with him.
At issue on appeal are statements Ms. Spencer made during her testimony and statements Detective Maria Carney made during her testimony. Coverdale twice sought a mistrial when Ms. Spencer made nonresponsive statements when she was testifying. In response to a question by the prosecutor about Coverdale, Ms. Spencer stated, "He would not leave us alone. He was incarcerated a little while." The trial court denied the defense motion for mistrial, reasoning that it was not clear from her statement that the incarceration was for other offenses and "instead of ringing the bell twice" just instructed the jury to "disregard this witness's last statement in total."
On cross-examination, Ms. Spencer was asked about her friend Nina's feelings about Coverdale. Ms. Spencer testified, "She was okay with him until he tried to molest her daughter." The trial court denied the motion for mistrial and instructed the jury "to ignore the last statement of the witness."
With respect to the proper standard of review, a harmless error analysis is unnecessary when "the trial court recognized the error, sustained the objection and gave a curative instruction. Instead, the correct appellate standard is whether the trial court abused its discretion in its denial of a mistrial." Goodwin v. State, 751 So.2d 537, 547 (Fla.1999); see also Anderson v. State, 841 So.2d 390, 403 (Fla. 2003) (citing Goodwin). In Goodwin, the improper comment was "bad neighborhood" testimony by an officer regarding drug sales. 751 So.2d at 538. The court determined that the comment was not "so prejudicial as to deny defendant a fair trial." Id. at 547. In Anderson, the prosecutor made comments in closing about how drug traffickers behave when they are stopped by the police. The court stated that the trial court did not abuse its discretion in denying the motion for mistrial and stated that "[a] mistrial is appropriate only where the error is so prejudicial as to vitiate the entire trial." 841 So.2d at 403.
In Brooks v. State, 868 So.2d 643 (Fla. 2d DCA 2004), which Coverdale relies upon, the defendant was convicted of aggravated battery with a deadly weapon and had raised self-defense as a defense at trial. This court determined that the trial court abused its discretion in failing to grant a motion for mistrial based on the victim's nonresponsive testimony that following a prior incident of domestic violence, the defendant was "`sent back to prison.'" Id. at 643. This court in Brooks recognized that "[t]he improper admission of evidence concerning a defendant's prior criminal history is frequently too prejudicial for the jury to disregard, regardless of any curative instruction given by the trial court. When any curative instruction would be insufficient, the trial court should grant a mistrial." 868 So.2d at 645 (quoting Henderson v. State, 789 So.2d 1016, 1018 (Fla. 2d DCA 2000) (citation omitted)).
Here, the statement that Coverdale had been incarcerated was prejudicial but, standing alone, was insufficient to vitiate *561 the entire trial or deprive him of a fair trial. The statement was not clear as to why the incarceration had occurred, and the jury may have believed that it related to the present offense. However, the comment that Coverdale tried to molest Nina's daughter is far more egregious. Few criminal allegations would be more prejudicial to a defendant than molesting a child. If the jury believed the statement that Coverdale was a child molester, this gratuitous statement would deny him a fair trial on the aggravated stalking charge, and no curative instruction could unring that bell. See Denmark v. State, 927 So.2d 1079, 1081 (Fla. 2d DCA 2006) (recognizing the futility of a curative instruction when asking the jury to disregard prior criminal offenses by the defendant). We conclude that under these circumstances, the trial court abused its discretion in denying the motion for mistrial with respect to the comment that Coverdale tried to molest Nina's daughter.
With respect to Detective Maria Carney's testimony, Detective Carney testified that she was dispatched to Ms. Spencer's residence where she encountered Coverdale and showed him the no contact order. Detective Carney testified that Coverdale told her that he did not care, and she testified that he was irate. Detective Carney told Coverdale that he needed to stay away from Ms. Spencer and stop coming to her residence. The trial court then allowed Detective Carney to testify, over defense objection, that Coverdale stated to her
that he was going to hunt me down, that he was going to make sure thatbasically he was going to hunt me down and make sure that I was going to be miserable, that it would be nice to see my head blown off. He made some reference to me being a Puerto Rican bitch, and that I would look really good with a bullet in my head. It went on and on for 45 minutes.
The State first argued that the statement showed lack of respect and then added that it showed Coverdale's "state of mind, that it's stalking in violation of the DVI, repeated contact DVI. She's stating, you can't violate this DVI." The defense argued that the prejudicial effect of the statement outweighed the probative value. The trial court found that the defendant's state of mind was relevant in this case because the "whole defense theory in this case is not that he's stalking her, but that he's in love with her and that she's in love with him." The defense reiterated that the court had to weigh the probative value and the prejudicial effect and that the State "wants to paint the picture that he's threatening everybody, which is a prior bad act." The court ruled that the statement was relevant and overruled the objection. The defense then made a motion for mistrial which the trial court denied. The court did not make any statements that reflected it had weighed the probative value of the statement against its prejudicial effect.
Our review of the admissibility of Detective Carney's statement is for an abuse of discretion. See Mims v. State, 872 So.2d 453, 455 (Fla. 2d DCA 2004). The issue here does not deal with similar fact evidence of other crimes under section 90.404(2), Florida Statutes (2004), but with evidence of dissimilar collateral bad acts. Thus, the general rule of relevance in section 90.402 controls. See Jorgenson v. State, 714 So.2d 423, 427 (Fla.1998). However, evidence of other crimes, "even if relevant, should not be admitted if its probative value is substantially outweighed by undue prejudice." Bryan v. State, 533 So.2d 744, 746 (Fla.1988); see also § 90.403 ("Relevant evidence is inadmissible if its probative value is substantially *562 outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.").
As in Mims, the trial court here failed to balance the danger of unfair prejudice against the probative value of the challenged evidence. The danger of unfair prejudice is great regarding a statement that the defendant would "hunt down" the detective and that it would be nice to see her "head blown off." We see no probative value in the challenged statement regarding whether Coverdale intended to violate the DVI. Detective Carney's testimony that she showed Coverdale the no contact order and that Coverdale then stated that he did not care and Detective Carney's testimony that Coverdale was acting irate do address Coverdale's state of mind. But, the additional testimony about Coverdale's threat to hunt down the detective and that she would look good with a bullet in her head or that it would be nice to see her head blown off was unduly prejudicial. Thus, the trial court abused its discretion in allowing the testimony.
A harmless error analysis is applicable to the improper admission of testimony under section 90.403. See Denmark, 927 So.2d at 1082; Mims, 872 So.2d at 456. To establish harmless error, the State must prove that there is "no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
The State presented evidence at trial that would support a conclusion that Coverdale was indeed stalking Ms. Spencer. However, Coverdale presented a defense that his letters were not malicious and were not meant to harass but served a legitimate purpose of trying to rekindle the relationship with Ms. Spencer. We note that the prosecutor in closing argument discussed Detective Carney's encounter with Coverdale. Although the prosecutor did not specifically mention the challenged comments, he did state, "Consider his [Coverdale's] reaction being told he could no longer have contact with Ms. Spencer." Thus, the prosecutor reminded the jury of Coverdale's threats to the detective.
We conclude that the State has not met its burden to show that there is no reasonable possibility that the testimonythat Coverdale would "hunt down" the detective and that it would be nice to see her "head blown off" or that she would "look good with a bullet in her head"contributed to Coverdale's conviction. Thus, we reverse and remand for a new trial based on the admission of Detective Carney's testimony and Ms. Spencer's testimony that Coverdale tried to molest Nina's daughter.
Finally, we note for purposes of remand that the trial court must instruct the jury that an element of aggravated stalking under section 784.084(4) is that the defendant had knowledge of the injunction. See State v. Johnson, 676 So.2d 408, 411 (Fla.1996); Cazeau v. State, 873 So.2d 528, 529 (Fla. 4th DCA 2004).
Reversed and remanded for new trial.
ALTENBERND and WALLACE, JJ., Concur.
NOTES
[1] At trial, the validity of the no contact amendment was disputed, but that issue was not raised on appeal and we do not address it.