947 So.2d 460 (2006)
Simon LANGDON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-2791.
District Court of Appeal of Florida, Third District.
October 4, 2006.
Opinion Granting Clarification January 17, 2007.
Charles J. Crist, Jr., Attorney General, and Michele Samaroo, Assistant Attorney General, for appellee.
Before FLETCHER and SHEPHERD, JJ., and SCHWARTZ, Senior Judge.
PER CURIAM.
This is an appeal of an order summarily denying a motion under Florida Rule of Criminal Procedure 3.800(a). On appeal from a summary denial, this court must reverse unless the postconviction record, see Fla. R.App. P. 9.141(b)(2)(A), shows conclusively that the appellant is entitled to no relief. See Fla. R.App. P. 9.141(b)(2)(D).
On June 11, 2004, appellant pled guilty to violation of probation and was sentenced to ten years in state prison with credit for time served from March 22, 2004 until appellant's plea. Appellant filed this Rule 3.800(a) motion alleging entitlement to credit for eighteen months served on a prior violation of probation plea. The trial court denied relief without attaching records. While the State's appendix appears to refute appellant's factual allegations, we nevertheless must reverse and remand for attachment of records conclusively showing that the appellant is not entitled to any relief or an evidentiary hearing. See Futrell v. State, 932 So.2d 642 (Fla. 4th DCA 2006).
Reversed and remanded for further proceedings.
FLETCHER and SHEPHERD, JJ., concur.
SCHWARTZ, Senior Judge, dissents.

ON MOTION FOR CLARIFICATION
SHEPHERD, J.
We grant the State's timely motion for clarification pursuant to Florida Rule of Appellate Procedure 9.330(a). Our original opinion reversed the trial court's summary denial of defendant's motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.800(a) because the trial court did not attach to its order portions of the transcript conclusively demonstrating *461 that defendant waived entitlement to credit for time served in prison. See Langdon v. State, 947 So.2d 460 (Fla. 3d DCA Oct. 4, 2006); Friss v. State, 881 So.2d 38 (Fla. 5th DCA 2004)("It is not the defendant's burden to attach portions of the record showing entitlement to relief, but it is the trial court's responsibility to attach portions conclusively refuting the claim."); see also Futrell v. State, 932 So.2d 642 (Fla. 4th DCA 2006); McClain v. State, 629 So.2d 320, 321 (Fla. 1st DCA 1993)("A trial court's failure to attach portions of the record refuting the allegations of a rule 3.850 motion cannot be remedied on appeal by the state's attempt to furnish material refuting the prisoner's claims.");[1]Lundy v. State, 912 So.2d 671 (Fla. 3d DCA 2005).
However, Rule 3.800(a) "does not contemplate an evidentiary hearing." Renaud v. State, 926 So.2d 1241, 1242 (Fla. 2006). We therefore remand for further proceedings. If the trial court again summarily denies the motion, it shall attach portions of the record showing conclusively that appellant is entitled to no relief. See Fla. R.App. P. 9.141(b)(2)(D).[2], [3]
Reversed and remanded for further proceedings.
FLETCHER, J., concurs.
FLETCHER, Judge (concurring).
Here I am caught between two jurisprudential philosophies, the first of which would require our following the law as commanded while the second would have us act in defiance of the law based on "common sense."
It was Florida Justice Glenn Terrell who wrote "When the law and common sense are in conflict the law must yield." Apparently, the dissent agrees. I cannot join with Justice Terrell as law as a body is uncommon sense, having been forged, molded, and refined for generations, each adding its hard-earned lessons to the progress of law. While I understand one's desire to function based on one's own "common sense," I distrust common sense as it is only too often wrong. The classic example of common sense in error is the belief once held that the sun circles the earth  which made common sense as the earth was "obviously" a stable platform on which one could safely stand and watch the sun rise and set.[4]
The highly regarded jurist Jeremy Bentham,[5] might agree with the dissent, having quipped "The law is the science of being methodically ignorant of what everybody knows."[6] Whatever. I choose the *462 law over somebody else's common sense. Hence, I concur with Judge Shepherd's opinion.
SCHWARTZ, Senior Judge (dissenting).
The only issue raised by Langdon's motion for Rule 3.800(a) relief concerns the failure of the trial court to award him credit for time served from the date of his initial arrest for two counts of burglary with an assault or battery in 2000, rather than the March 22, 2004, date when he was last taken into custody for a second violation of probation which he admitted and for which he was sentenced on June 11, 2004. On this appeal from the denial of that motion, the state, pursuant to our order to file a response, has submitted the transcript of the plea colloquy which contains the following:
DEFENSE: All credit time served.
CORRECTIONS: Credit for time served, Judge?
THE COURT: He gets credit time served since the last book in (sic) date which is March 22nd, 2004.
Thus, it is clear that as a part of the plea bargain, Langdon agreed to the March 22, 2004, date and waived his right to credit for the time previously served.[7] It is a moral certainty, therefore, that the order below denying relief was entirely correct and should be (summarily) affirmed. Instead, the Court reverses. It does so for the overwhelming reason that the trial court did not itself physically "attach" to the order portions of the record showing that he is not entitled to relief. See Fla. R.Crim. P. 3.850(d); Fla. R. App. P. 9.141(b)(2)(D).[8]
There are many reasons why this result is very wrong. First, our duties extend to and are limited to the obligation to render a correct disposition of the particular case before us, not to act as a code enforcement officer searching a record with the Florida rules in hand in order to find and correct any deviation and to punish the violator  in this case, the trial judge himself  by reversing his ultimate decision. See Hall v. State, 444 So.2d 1019, 1020 (Fla. 3d DCA 1984)("Our function is to determine the result of this and every other appeal in accordance with the demands of essential justice to all litigants in the cause. That high purpose is not achieved if a reversal is employed in a criminal case solely to discipline an attorney for misconduct which did not affect the outcome of the trial or the substantial rights of the defendant."). Such a task lies far beyond our resources and, much more important, far above our poor power to affirm or reverse. The triviality and sheer lack of common sense in doing so in this particular instance is emphasized by the majority's observation that
nothing in the rules of criminal or appellate procedure precludes the trial court from attaching or incorporating a response from the State which provides the necessary documents.
Op. at 461 n. 2. In other words, the trial court may avoid being reversed the next *463 time by simply detaching the plea colloquy from our files and attaching it to its subsequent order.[9], [10]
I had also believed, however, that courts should (a) avoid legal wheel-spinning, see State v. Rucker, 613 So.2d 460, 462 (Fla.1993)(condemning legal "churning"), (b) not require the performance of useless or meaningless acts, Dines v. Fla. Unemployment Appeals Comm'n, 730 So.2d 378 (Fla. 3d DCA 1999); see Costarell v. Fla. Unemployment Appeals Comm'n, 916 So.2d 778 (Fla.2005), (c) deny legal effect to technical missteps which affect no one's substantial rights, Goodwin v. State, 751 So.2d 537 (Fla.1999), and, (d) most pointedly in this case, refuse to require that "the parties and the lower court do the long way what we ourselves should do the short." Mizell v. State, 716 So.2d 829, 830 (Fla. 3d DCA 1998); State v. Bodden, 756 So.2d 1111 (Fla. 3d DCA 2000). The Court's opinion is contrary to all of these principles  not to mention the even more significant ones that afford trial court orders a presumption of correctness which it is the duty of the appellant to overcome rather than the trial court to justify, and that mere "harmless error" cannot justify reversal. §§ 59.041, 924.051(7), Fla. Stat. (2006). That it is not only unwise, but unnecessary, to do any of these things is shown by Sweeney v. State, 944 So.2d 474, 2006 WL 3421802 (Fla. 4th DCA Case no. 04D06-4205, opinion filed, Nov. 29, 2006), in which the court held:
Under rule 3.800(a), Appellant challenges the minimum mandatory portion of his 1991 sentence for attempted murder of a law enforcement officer. The lower court dismissed the motion under the belief the issue had been litigated in various rule 3.850 motions or on direct appeal. The lower court failed to attach any document supporting this conclusion and our records reveal none. From the face of the record, Sweeney is not entitled to the relief he seeks. Thus the lower court should have denied relief on the merits and not dismissed the case as procedurally barred. Remand for such an order would be a waste of judicial resources and thus we choose to affirm on the merits. See generally Richardson v. State, 918 So.2d 999, 1004 (Fla. 5th DCA 2006) (refusing to remand where the trial court improperly denied a petition, where dismissal was the proper disposition).
(Emphasis added). Likewise, in Harvester v. State, 817 So.2d 1048, 1049 (Fla. 2d DCA 2002), the court stated:
[A] reversal is often a very inefficient method to address an order that may be deficient only because it has failed to attach one or more essential documents. A reversal often does not result in a new order from the trial court for several months. If the trial court again denies the postconviction motion, invariably the defendant files another appeal. That appeal is often assigned to a new panel of judges who often repeat work performed by the first panel.
In many appeals, this court could determine whether the trial court's initial order was correct merely by obtaining a few more documents from the trial court *464 record. This case is a good example of such an appeal. Accordingly, we take this opportunity to announce that when the trial court's order denying a postconviction motion references attachments that are not actually attached or requires this court to review an identifiable document from the trial court record that is not attached to the order, this court will exercise its discretion by either relinquishing jurisdiction to the trial court for thirty days for the preparation of an amended order or by ordering the trial court to supplement the record with the necessary records.

(Emphasis added).
In support of its contrary decision, the Court offers only a quotation of the ipse dixit in McClain v. State, 629 So.2d 320, 321 (Fla. 1st DCA 1993), that
[a] trial court's failure to attach portions of the record refuting the allegations of a rule 3.850 motion cannot be remedied on appeal by the state's attempt to furnish material refuting the prisoner's claims.
Op. at 461. Well, why not?[11]
In sum, the majority conclusion is so far opposed to my ideas of what modern decision-making should be about[12] that I would like to express myself in a more emphatic manner. Unfortunately, however, it would be undignified and I am too old to picket the Court. I can only dissent.
NOTES
[1] Although the appellant here raises a Rule 3.800(a) rather than a Rule 3.850 claim, we believe the procedural requirements are essentially the same here. See Fla. R.App. P. 9.141(b)(2)(A)-(D).
[2] We note that nothing in the rules of criminal or appellate procedure precludes the trial court from attaching or incorporating a response from the State that provides the necessary documents. See Futrell, 932 So.2d at 643. Cf. McClain, 629 So.2d at 321.
[3] We pause to acknowledge the ear appeal of the dissent. If persuasiveness were the test, we would be tempted to "plead guilty" and succumb. Unfortunately, carefully crafted criminal and appellate rules adopted by the Florida Supreme Court constrain we lesser mortals who serve on this court. While not "too old to picket" in our humble opinion, see infra p. 464, we suggest only to our esteemed senior colleague in the dissent that the proper place to protest in this case is to a court to our north.
[4] (A healthy belief although wrong as the Inquisition was in full swing and its CEO did not take kindly to contrary views.)
[5] b. 1748; d. 1832.
[6] Bentham still attends University College London. (He is well preserved for his years.)
[7] It is important to point out that the ten-year sentence imposed for this violation of probation (he had been given eighteen months in prison followed by three more years of probation on an earlier one) would have made little sense if it did not include a waiver of credit for the time served from the initial arrest in 2000, as the law otherwise requires. Fulcher v. State, 875 So.2d 647 (Fla. 3d DCA 2004), case dismissed, 890 So.2d 1114 (Fla.2004).
[8] Almost as an aside, I doubt both the wisdom and the theoretical defensibility of requiring, not the clerk, but the court itselfwhose rulings are presumptively correct and which is supposed to have no interest in the outcome of the proceedingto uphold its ruling by mechanically supplying materials in its support.
[9] It is doubtful that those humble office appliances  the stapler, the staple remover and the staple itself  have ever before achieved such lofty significance.
[10] What's more, if the trial court does not undertake this awesome responsibility, this Court will specifically order it to do so. See Brown v. State, 946 So.2d 62, 2006 WL 3734380 (Fla. 3d DCA Case no. 3D05-2834, opinion filed, Dec. 20, 2006).
[11] I believe that the majority decision is an unfortunate example of the process Cardozo described as follows:

Judges march at times to pitiless conclusions under the prod of a remorseless logic which is supposed to leave them no alternative. They deplore the sacrificial rite. They perform it, none the less, with averted gaze, convinced as they plunge the knife that they obey the bidding of their office. The victim is offered up to the gods of jurisprudence on the altar of regularity.
Doctor v. State, 677 So.2d 1372, 1373 (Fla. 3d DCA 1996)(specially concurring opinion)(quoting Benjamin Cardozo, The Growth of the Law, in Selected Writings of Benjamin Nathan Cardozo 214 (Margaret E. Hall ed.1947)), approved, 698 So.2d 1224 (Fla. 1997).
[12] As stated in Gregory v. Gregory, 289 So.2d 468, 469 (Fla. 2d DCA 1974), quoted in Hill v. Hill, 778 So.2d 967, 969 n. 6 (Fla.2001)(Pariente, J., specially concurring), holding that an omission from the record should be corrected, if possible, on appeal:

We see no reason why either appellate decision-making or appellate practice should differ in any substantial way from the manner in which cases are determined and presented in the trial courts: with an equally effective determination that, as far as possible, cases are to be determined on their merits.