DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WILLIAM E. GOLDBACH,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D21-3545

[November 23, 2022]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Melinda Brown, Judge; L.T. Case No. 20003628MU10A.

Gordon Weekes, Public Defender, and Jennifer Lynn Edgley, Assistant Public Defender, Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Lindsay A. Warner, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals from his conviction for driving under the influence. The defendant argues, among other things, that the trial court erred in denying his motion for new trial after the trial court had allowed the state to commit golden rule violations during voir dire and closing argument. While we agree with the defendant that the trial court erred in allowing the golden rule violations, we do not think those errors rose to the level of requiring a new trial. Therefore, we affirm the defendant's conviction and sentence. However, we write to address the golden rule violations to better ensure that such violations do not recur in DUI cases.

### *The State's Voir Dire and Closing Argument*

During voir dire, the state sought to ask the venire about Florida's implied consent law. *See, e.g.*, § 316.1932(1)(a)1.a., Fla. Stat. (2019) ("The person shall be told that his or her failure to submit to any lawful test of his or her breath will result in the suspension of the person's privilege to operate a motor vehicle …. The refusal to submit to a chemical or physical

breath test upon the request of a law enforcement officer as provided in this section is admissible into evidence in any criminal proceeding.").

However, rather than simply telling the venire that was the law, and then asking the venire whether they could apply that law to consider whether a person's refusal to submit to a breath test could reflect consciousness of guilt, the state began by asking the venire, "How important is your driver's license to you?" Defense counsel objected, indicating at sidebar that such questions would be a golden rule violation for "putting [the venire] in the place of the defendant." The state responded that it was trying to "educate" the venire, and intended to ask the venire similar questions such as "How much would you sell your license for?" Defense counsel then aptly replied, "[W]hat does [that] have to do with juror qualification?"

The trial court initially sustained defense counsel's objection. But then, after further discussion, the trial court allowed the state to proceed on this line of questioning. Thus, the state asked the venire more questions such as: "[Y]ou really need your car and you really need your driver's license, right?;" "Would you sell your driver's license to me for $5,000? $50,000? $500,000?;" and "Would you not sell me your driver's license because it's too valuable to lose?" The state then posed a lengthy hypothetical, summarized here as, "If you lied to your boss about having a high fever to get the day off, then ran into your boss who asked to take your temperature, would you allow your boss to take your temperature knowing that if you do, you will lose your job?" After the venire collectively responded "no," the state concluded by saying, "That's called consciousness of guilt. In other words, that's called guilty-mind."

During the state's closing argument, anticipating defense counsel might argue the state's evidence was insufficient due to the lack of a breath or blood test, the state reminded the jurors of the state's voir dire regarding whether jurors would "take the test" as posed in the state's hypothetical:

> The [d]efense is going to tell you that there's not enough evidence because we didn't … provide a breath or a blood [test] because the defendant refused. But here's the moment of truth. *Provide the temperature check when … your boss is standing next to you or not. That's the moment of truth. Do you take the breath test or the urine or the blood, or not? Now you all agreed with me because nobody rose or raised their hand and said, "I would take the test—"*

(emphasis added).

2

Defense counsel objected to the golden rule violation.  The trial court sustained the objection.  Defense counsel then orally moved for a mistrial. The trial court responded:

> I'm denying [the defendant's motion for mistrial] at this moment.  I don't feel it rises to the level of a mistrial[,] but do not use the [g]olden [r]ule in any way ever again, violating the [g]olden [r]ule, because you don't want the jury in the position of the defendant nor in the circumstances where they put themselves in this case.

Despite the trial court's ruling, the state again tried to compare the defendant's willful failure to submit to a breath or blood test—and its resulting driver's license suspension—to the jurors' unwillingness to lose their driver's licenses, as discussed during voir dire:

> [T]he defendant said no.  And we also talked [during] jury selection about the devastating results of possibly losing your driver's license.  And we had a little bid war, an auction going on, and I went all the way up to $500,000.

Defense counsel again objected to the golden rule violation.  This time, however, the trial court responded, "Overruled at this point."  Thus, the state expounded upon its golden rule argument once more, using the jurors' unwillingness to lose their driver's licenses—contrasted with the defendant's willingness to lose his driver's license by failing to submit to a breath or blood test—to argue his consciousness of guilt:

> And I remember [one juror] saying[] … that it would be devastating to … be in [the] position [to lose his driver's license].  The defendant on the night in question gave up his driver's license for zero dollars, for zip.  For nothing.  Nobody paid him five thousand dollars.  That, ladies and gentlemen, is consciousness of guilt.  It's a guilty mind.

After the state concluded its closing argument, defense counsel renewed the motion for mistrial.  The trial court initially reserved ruling, but eventually denied the motion.

The jury found the defendant guilty as charged of DUI.  After sentencing, defense counsel timely filed a written motion for new trial.  The motion argued that the state's golden rule violations, among other issues, had denied the defendant a fair trial.  The trial court denied the motion.

## *Our Review*

Although the most common golden rule violation in criminal cases may occur when the state asks jurors "to place themselves in the *victim's* position," *Mosley v. State*, 46 So. 3d 510, 520 (Fla. 2009) (emphasis added), a golden rule violation may occur anytime a party asks jurors to place themselves in any party's position to decide the case on the basis of personal bias, rather than on the evidence. *See, e.g., Shaffer v. Ward*, 510 So. 3d 602, 603 (Fla. 5th DCA 1987) ("The 'Golden Rule' argument urges the jury to place themselves in a party's position to allow recovery as they would want were they the party. … Such an argument is improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias, rather than on the evidence.") (internal citations omitted); *Miku v. Olmen*, 193 So. 2d 17, 18 (Fla. 4th DCA 1966) (golden rule argument is improper whether employed by plaintiff or defendant), *receded from on other grounds*, *Cleveland Clinic Fla. v. Wilson*, 685 So. 2d 15, 15-16 (Fla. 4th DCA 1996).

Here, the defendant correctly contends the state linked its voir dire and closing argument to a common theme of asking the jurors to place themselves in the defendant's position—by contrasting the jurors' unwillingness to lose their driver's licenses with the defendant's willingness to lose his driver's license—to prove his consciousness of guilt. These comments violated the golden rule.

Interestingly, during both the state's voir dire and closing argument, the trial court initially sustained defense counsel's objections to the state's golden rule violations. But for some reason, the trial court later changed its mind and allowed the state to proceed with the improper comments. The trial court's initial instinct to sustain defense counsel's objections was correct. Thus, ultimately overruling those objections was error.

Because of the trial court's errors in overruling defense counsel's objections to the state's golden rule violations, we must decide whether those errors were harmless and whether the trial court erred in denying the defendant's motion for new trial. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) ("The harmless error test … places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."); *Goodwin v. State*, 751 So. 2d 537, 547 (Fla. 1999) ("[A] motion for mistrial should be granted only when it is necessary to ensure that the defendant receives a fair trial.") (citation and

internal quotation marks omitted); *Grushoff v. Denny's Inc.*, 693 So. 2d 1068, 1069 (Fla. 4th DCA 1997) ("[T]he legal standard for trial courts to use in deciding motions for new trial based upon counsel's improper argument is whether the commentary was *highly prejudicial and inflammatory.* A golden rule argument is merely a type of argument branded prejudicial, but it may not always be so.") (internal citation and quotation marks omitted).

Applying the foregoing standards of review, and after having reviewed the trial transcript as a whole, we cannot conclude a reasonable possibility exists that the state's golden rule violations contributed to the defendant's conviction or were so prejudicial or inflammatory as to deny the defendant a fair trial.

We consider the state's voir dire and closing argument comments regarding the venire's self-perceptions of their driver's licenses' value—as well as the state's convoluted hypothetical regarding whether the venire would lie to their boss about having a high fever, but then not allow their boss to take their temperature to avoid losing their job—were simply unnecessary, if not clumsy, attempts to "educate" the venire about whether a defendant's refusal to submit to a breath or blood test can reflect consciousness of guilt. Fortunately, these attempts did not become a feature of the trial and, in our opinion, would not have distracted the jury from reasonably determining, based on the witnesses' testimony and video evidence, whether the defendant had committed DUI. *See id.* ("Generally, isolated [golden rule] comments such as this do not harmfully infect a case. … Under no construction of the closing argument in this case could this incomplete argument be considered highly prejudicial and inflammatory.").

As we stated above, however, despite having affirmed the defendant's conviction and sentence due to the harmlessness of the state's golden rule violations, we have written this opinion to better ensure that similar golden rule violations do not recur in DUI cases. We also use this opinion as a reminder that the purpose of voir dire is not—under the guise of "educating" the venire—to preview the arguments which will be made later in the trial. *Cf. Thomany v. State*, 252 So. 3d 256, 257 (Fla. 4th DCA 2018) ("[D]efendant's trial counsel spent an extraordinary amount of time asking questions not reasonably intended to elicit useful information in deciding whether to exercise cause or peremptory challenges. Rather, it appears counsel's questions primarily were intended to plant seeds in the jury's mind about the defendant's theory of the case, to be argued later during trial. Such 'pre-trying' of the case is not the purpose of voir dire, nor is it an appropriate use of the amount of time provided for voir dire.").

On all other arguments which the defendant raises in this appeal, we affirm without further discussion.

*Affirmed.*

MAY and ARTAU, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***